Jane **CAMERON**, Plaintiff,

v.

The **BOARD OF EDUCATION OF THE HILLSBORO, OHIO, CITY SCHOOL DISTRICT, et. al.,** Defendants.

No. C–1–90–291.

United States District Court,
S.D. Ohio, W.D.

Sept. 12, 1991.

Marc David Mezibov, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, Ohio, for plaintiff.

Ralph Gary Winters, McCaslin, Imbus & McCaslin, Cincinnati, Ohio, Karrie M. Ka-

lail, Whalen & Compton, Akron, Ohio, for defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the defendants' motion for summary judgment (doc. 12), and plaintiff's memorandum in opposition (doc. 14).

### FACTS

The case before the Court involves a teacher who alleges that the School Board and administration did not renew her contract based upon sex discrimination. Specifically, the teacher avers that the defendants discriminated against her because she conceived a child through artificial insemination, and because of her status as an unwed mother.

The plaintiff, Jane Cameron, worked as a teacher at Hillsboro City School. The defendants are the Hillsboro City School District Board of Education ("Hillsboro" or "Hillsboro Board of Education"), Superintendent John Burton, and head teacher Joseph Temple, Jr.

Ms. Cameron contracted with Hillsboro for a series of one, two, and three year teaching contracts from 1978 until 1989. *Deposition of Jane Cameron* ("Cameron Dep."), at 11–13. During the course of Ms. Cameron's employment, Hillsboro adopted a new process to evaluate teachers. In her evaluations, Ms. Cameron generally received "satisfactory" marks. During some years, however, Ms. Cameron's evaluation stated that she needed to improve in certain areas. Moreover, Joseph Temple, head teacher (a position akin to principal), received numerous parental complaints about Ms. Cameron. *Deposition of Joseph Temple, Jr.* ("Temple Dep."), at 58. He recommended that her teaching contract should not be renewed following the 1981–82 and 1982–83 school years. *Id.* at 63. Hillsboro, nevertheless, continued to renew Ms. Cam-

eron's teaching contract until the end of the 1988–89 school year.

In January, 1986, Ms. Cameron, who has never been married, decided that she would try to become pregnant through artificial insemination. After she had received a three-year contract at the conclusion of the 1985–86 school year, Ms. Cameron informed Superintendent Burton of her desire to have a child. Mr. Burton informed Ms. Cameron that her decision would not affect her employment with Hillsboro. *Cameron Dep.*, at 105. Shortly thereafter, Hillsboro awarded her a three-year teaching contract on April 8, 1986. Subsequently, Ms. Cameron became pregnant through artificial insemination and informed Mr. Burton in May, 1987 of her pregnancy. *Id* at 103.

In the summer of 1987, Ms. Cameron enrolled in a teacher enrichment program at Miami University, Ohio. While enrolled in the program, Ms. Cameron experienced vaginal bleeding. *Id* at 109. She phoned her physician, who instructed her to stay off her feet as much as possible. With her instructor's approval, Ms. Cameron continued to do her assignments in her room without attending classes. Despite these precautions, in July 1987, Ms. Cameron had a miscarriage. *Id.* at 112, 113. Ms. Cameron never received credit for the course, although defendants' contend that Ms. Cameron could have completed the course later and received credit for the program.

After the miscarriage, Ms. Cameron once again underwent artificial insemination and became pregnant around February, 1988. Later that spring, Ms. Cameron informed Superintendent Burton of her pregnancy. *Id.* at 119.

In January 1988, Ms. Cameron requested recommendations for graduate study from Joseph Temple, head teacher, John Burton, Superintendent, and Karen Newland, Administrative Assistant and Curriculum Director for Hillsboro. All three recommendations were positive. *Temple Dep.*, at 296 and Plaintiff's ex. 30; *Deposition of John Burton* ("Burton Dep."), at 165–66 and Plaintiff's ex. 74; *Deposition of Karen Newland,* at 72 and Plaintiff's ex. 9.

In June, 1988, Mr. Temple wrote a memorandum to Ms. Cameron in which he criticized her teaching performance. This memorandum was followed by further critical memoranda setting forth his concerns. Specifically, he stated in the memorandum that he was concerned about her lack of professionalism as demonstrated by her failure to receive credit for her two teacher enrichment courses, a high incidence of absences in the 1987–88 school year, and a number of parental complaints concerning Ms. Cameron's unfairness toward certain students. *Temple Dep.*, at 198 and Plaintiff's ex. 35.

In August, 1988, Mr. Temple told Ms. Cameron that he had asked Karen Newland to serve as Ms. Cameron's mentor and to help Ms. Cameron reach five objectives which he had set for her. Ms. Newland was not told of the objectives set for Ms. Cameron until October 12th, and Ms. Newland neither evaluated nor observed Ms. Cameron's teaching during the 1988–89 school year. *Burton Dep.*, at 134–136.

On October 14, 1988, Ms. Cameron, who was entering her ninth month of pregnancy, notified Mr. Temple that she would begin a leave of absence on October 21, 1988 to have her baby. *Cameron Dep.*, at 120; Plaintiff's ex. 37. Later that day, Ms. Cameron, Ms. Newland, and Mr. Temple had a meeting, at which Ms. Newland questioned whether Ms. Cameron had fully considered the problems of being a single parent. *Cameron Dep.*, at 172. During this period in question, Hillsboro also employed Ruth Thurman during the 1988–89 school year, who was also an unwed mother during the 1988–89 school year. *Hagan Affidavit*, at para. 2.

On October 18, 1988, Superintendent Burton wrote the School Board's counsel and made reference to Ms. Cameron's unmarried status and to the fact that she was to conceive a child through medical means. *Burton Dep.*, at 113: and Plaintiff's ex. 70. On October 22, Ms. Cameron stopped teaching as instructed by her doctor and gave birth in November.

While Ms. Cameron was on maternity leave, Superintendent Burton determined that he would recommend to the Hillsboro Board of Education that Ms. Cameron's contract should not be renewed at the April 10, 1989 School Board meeting. *Burton Dep.*, at 149, 150. On the morning before the Board meeting, Mr. Burton scheduled a meeting with Ms. Cameron to inform her of his recommendation. Mr. Burton stated in that meeting that Ms. Cameron's non-renewal was not based upon her performance. *C. Ray Sutherland Deposition*, at 28; *Cameron Dep.*, at 197. Later that day, April 10, 1989, the Hillsboro School Board voted not to renew Ms. Cameron's contract.

On May 12, 1989, Ms. Cameron filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Ray Sutherland, a labor relations consultant, drove Ms. Cameron to the EEOC office to file her charge. *Sutherland Dep.*, at 47–48. Mr. Sutherland states that he only talked to Ms. Cameron about the conditions which gave rise to the charge and did not instruct Ms. Cameron about how to file the charge. *Id.*

Following receipt of the EEOC's Right to Sue Notice, Ms. Cameron filed her complaint in this Court. In her complaint, Ms. Cameron alleges seven causes of action. She alleges Title VII violations and causes of action under 42 U.S.C. § 1983 for denial of procedural and substantive due process, privacy, and equal protection laws. In addition, the plaintiff added pendant state claims of intentional or reckless infliction of emotional distress, breach of contract, tortious interference with contract, wrongful discharge, and sex discrimination.

### STANDARD

The narrow question that we must decide on a motion for summary judgment is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving

party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ. P.). Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* We are further guided by the Supreme Court's relatively recent elaboration of this standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

477 U.S. at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## COUNT I

In Count I, Jane Cameron alleges that the defendants violated Title VII of the Civil Rights Act of 1964 by not renewing her teaching contract. Title VII forbids sex discrimination. Sex discrimination includes discrimination because of "pregnancy, childbirth, or [other] related medical conditions." *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Johnson Controls, Inc.*, —— U.S. ——, ——, 111 S.Ct. 1196, 1203, 113 L.Ed.2d 158, 173 (1991) (quoting *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 684, 103 S.Ct. 2622, 2631–32, 77 L.Ed.2d 89 (1983)).

■ In a Title VII case, the plaintiff carries the initial burden of proving a *prima facie* case of discrimination. *Texas Depart. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff meets this initial burden, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Id.* Finally the burden shifts back to the plaintiff to prove that the defendant's proffered reason was a mere pretext for discrimination. *Id.*

■ In the matter before the Court, Hillsboro and the other defendants concede for the purposes of this motion that the plaintiff has met its initial burden to establish a prima facie case. Brief for Defendant, doc. 12, at 5. The defendants argue that they have met their burden by articulating a legitimate, nondiscriminatory reason for their actions. Namely, the defendants assert that Ms. Cameron's contract was not renewed because she was a poor teacher, received parental complaints, and displayed a lack of professionalism. *Id.* However, the defendants have not sufficiently supported their assertions. The defendants, as the party moving for summary judgment, must show that no genuine dispute as to material facts exists. They have not met this burden in the case before the Court. A genuine factual dispute exists as to the reasons behind Ms. Cameron's dismissal.

The defendants point to the fact that Ms. Cameron was a poor teacher and that they received parental complaints about her. Brief for Defendants, doc. 12, at 5. Ms. Cameron cites that she generally received "satisfactory" evaluations from the defen-

dants. Brief for Plaintiff, doc 14, at 18. Moreover, the plaintiff notes that some of the defendants gave her positive recommendations in her application for graduate study. *Id.* Ms. Cameron adds that Superintendent John Burton stated that her nonrenewal was not based on her performance as a teacher. *Id.*

The defendants then state that Ms. Cameron displayed a lack of professionalism by not completing two teacher enrichment programs. Brief for Defendants, doc. 12, at 5. Ms. Cameron counters, claiming that she was ill. Brief for Plaintiff, doc. 14, at 18. Moreover, the plaintiff adds that she never made an effort to complete the course work. *Id* at 19.

In a motion for summary judgment, it is not the role of this Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1436 (6th Cir.1987). In the case at bar, the plaintiff and the defendants have pointed to conflicting evidence concerning the nonrenewal of Ms. Cameron's contract. The trier of fact must decipher and weigh this evidence. Accordingly, the defendant's motion for summary judgment is denied on this ground.

The defendants next argue that they are entitled to summary judgment on Ms. Cameron's claim of discrimination based upon her pregnancy by artificial insemination. The defendants note that Ms. Cameron failed to include the allegation in her EEOC charge. Brief for Defendants, doc. 12, at 7; Complaint for Plaintiff, doc. 1, ex. A (copy of plaintiff's EEOC charge). The defendants argue that the plaintiff's failure to include the allegation in her EEOC charge should result in summary judgment, because the plaintiff failed to exhaust her administrative remedies as required under *Ang v. Proctor & Gamble Co.*, 932 F.2d 540 (6th Cir.1991).

■ In order for the federal courts to have subject matter jurisdiction of Title VII claims, the claimant must first pursue administrative relief at the EEOC. *Ang,* 932 F.2d at 545 (citing *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)). If the claimant is unsuccessful at the EEOC, the claimant may then bring suit in federal district court. *Ang,* 932 F.2d at 545. The judicial complaint must be limited "to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* (quoting *EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir.1977), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978)).

In *Lowe v. City of Monrovia,* a plaintiff initially brought a race discrimination charge before the EEOC. 775 F.2d 998 (9th Cir.1985), *amended,* 784 F.2d 1407 (9th Cir.1986) The plaintiff in *Lowe* later tried to raise a sex discrimination claim, despite never alleging sex discrimination before and despite failing to pursue it at the administrative level. The *Lowe* court precluded the plaintiff from subsequently bringing a sex discrimination claim in federal court, because she had not brought the claim before the EEOC. *Id.*

Similarly in *Ang,* a man born in Indonesia and of Chinese ancestry alleged in his EEOC charge that he was terminated from employment because of his Indonesian national origin. 932 F.2d at 545. The court in *Ang* held that the plaintiff had not exhausted his administrative remedies as to his race discrimination claims. *Id* at 545, 546.

■ In the case at bar, however, Ms. Cameron is not precluded from bringing a sex discrimination claim based on her conceiving a child by artificial insemination in federal court. *Ang* is not controlling based upon two grounds. First, in *Ang* the plaintiff had the assistance of an attorney in preparing his charge. In the case before the Court, Ms. Cameron had no such assistance. Ray Sutherland, a labor consultant and not an attorney, drove Ms. Cameron to the EEOC office. *Sutherland Dep.*, at 47, 48. He discussed the conditions surrounding her charge, but did not counsel Ms. Cameron about how to file her EEOC charge. *Id.* When a claimant in a Title VII case does not have an attorney, courts are required to give a broad reading of the charge before the EEOC. *Ang* 932 F.2d at 546. In giving a broad reading of the charge in the case before the Court, Ms. Cameron's claim of discrimination because

of a pregnancy by artificial insemination is encompassed within her charge of sex discrimination and her position as an unwed mother. Therefore, Ms. Cameron is not precluded from bringing a claim of discrimination because of the plaintiff's method of conception.

*Ang* is distinguishable on a second ground, as well. *Bailey* requires that a plaintiff limits her complaint "to the scope of the EEOC investigation reasonably expected to grow out of the charge." 563 F.2d at 446. Ms. Cameron's complaint alleges that she was discriminated against on the basis of "having conceived a child by means of artificial insemination and/or for becoming an unwed mother...." Complaint of Plaintiff, doc. 1, at 5. In Ms. Cameron's EEOC charge, she claims that the defendants discriminated against because she was an unwed mother. *Id*, ex. A. The EEOC investigation inevitably would have included the means by which Ms. Cameron became pregnant. Thus, Ms. Cameron has met the requirement of *Bailey* by limiting her complaint before this Court to matters that would have grown out of the EEOC investigation.

Moreover, the policy of giving administrative agencies the first opportunity to resolve Title VII claims is not thwarted by allowing Ms. Cameron to include discrimination based upon her pregnancy by artificial insemination. Accordingly, defendants' motion for summary judgment on Ms. Cameron's claim that she was discriminated against based upon her pregnancy through artificial insemination is denied.

■ The defendants next argue that summary judgment should be granted to Mr. Burton and to Mr. Temple on the plaintiff's Title VII claim. Ms. Cameron did not include the defendants Burton and Temple in her charge before the EEOC. Brief for Defendants, doc. 12, at 7. The defendants argue that Ms. Cameron failed to exhaust her administrative remedies. The defendants point out that "private Title VII action may be brought only 'against the respondent named in the charge' previously lodged in the EEOC." *See* Brief for Defendant, doc. 12 at 7 (citing *Bratton v. Bethle-*

*hem Steel Corp.*, 649 F.2d 658, 666 (9th Cir.1980) (quoting *Gibson v. Local 40, Supercargoes and Checkers, ILWU*, 543 F.2d 1259, 1263 n. 1 (9th Cir.1976))).

However, a party not named in an EEOC charge may be sued under Title VII if "there is a clear identity of interest between it and a party named in the EEOC charge." *Jones v. Truck Drivers' Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir.1984). Courts generally have found an identity of interest where "the unnamed party has been provided with adequate notice of the charge under circumstances which afford him an opportunity to participate in conciliation proceedings...." *Romain v. Kurek*, 836 F.2d 241 (6th Cir.1987). In the case before the Court, Mr. Burton and Mr. Temple did have adequate notice. Mr. Burton served as Superintendent and Mr. Temple served as head teacher at Hillsboro. Ms. Cameron brought her EEOC charge against Hillsboro. In considering Mr. Burton's and Mr. Temple's respective positions at Hillsboro, Mr. Burton and Mr. Temple received adequate notice of the charge, and thus had the opportunity to participate in conciliation proceedings.

■ Moreover, this Court must give a broad reading of the charge before the EEOC because Ms. Cameron was without an attorney. *See Ang*, 932 F.2d at 546. Thus, Ms. Cameron's failure to use "procedural exactness" does not preclude her from now including Mr. Temple and Mr. Burton as defendants. Accordingly, the defendants motion for summary judgment for Mr. Burton and Mr. Temple is denied.

■ Finally, the defendants move for summary judgment for Mr. Temple, because he did not evaluate the plaintiff during the 1988–89 school year. Brief for Defendants, doc. 12, at 7. Thus, the defendants add that Mr. Temple did not make a recommendation to the Hillsboro Board of Education concerning the non-renewal of Ms. Cameron's contract. *Id.* The plaintiff counters the defendants' argument, claiming that Mr. Burton's recommendation was based upon Mr. Temple's evaluations of Ms. Cameron. Brief for Plaintiff, doc. 14,

at 22 (citing *Burton Dep.*, at 27, 28, and 56).

The issue of whether Mr. Temple played a role in the defendants' alleged discrimination in the nonrenewal of Ms. Cameron's contract is a question of fact for the jury. Accordingly, defendants' motion for summary judgment for Mr. Temple is denied.

## COUNT II

### Procedural Due Process

▇▇▇ In Count II, Ms. Cameron makes a series of § 1983 claims, alleging that the defendants violated her constitutional rights acting under color of state law. In the first allegation, the plaintiff claims that the defendants violated her Fourteenth Amendment right to procedural due process. For a procedural due process claim to arise, the plaintiff must have an interest in life, liberty, or property. U.S. Const., amend. XIV, § 1; U.S. Const., amend. V (applying Fourteenth Amendment due process rights to state action). The issue before the Court is whether Ms. Cameron had a property interest in her job.

A teacher has a property right in her job only if she has an entitlement to that job. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Ms. Cameron had no entitlement to her job at the end of the 1988–89 school year, because her contract had expired.[1] *Cf. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (no procedural due process right for a nontenured professor who is not rehired), with *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (tenured professor has a due process right after dismissal); *see also Hortonville Joint School Dist. No. 1 v. Hortonville Educational Assn.*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976) (due process clause does not guarantee teachers that the termination of their employment would be made or reviewed by anyone other than the school board); *Ryan*

*v. Aurora City Board of Educ.*, 540 F.2d 222 (6th Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) (nontenured teacher has no expectancy of continued employment where there exists a statutory tenure system). Thus, as a matter of law, the defendants did not violate the plaintiff's procedural due process rights. Accordingly, the defendants' motion for summary judgment is granted for Ms. Cameron's § 1983 claim for violations of procedural due process.

### Substantive Due Process

▇▇▇ Next, the defendants move for summary judgment on Ms. Cameron's § 1983 claim for violations of her substantive due process rights. The first issue before the Court is whether a woman has a constitutional privacy right to become pregnant by means of artificial insemination. Neither the parties nor the Court have found a case discussing this issue.

In considering this issue, this Court has examined the landmark right to privacy cases. In *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 the Supreme Court struck down the mandatory maternity leave rules for public school teachers in Cleveland, Ohio and Chesterfield County, Virginia. The Court declared that "[t]his Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 639, 94 S.Ct. at 796. The Court added that "there is a right 'to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision as to whether to bear or beget a child.'" *Id.* at 640, 94 S.Ct. at 796, (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972); *see also Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 796–97, 35 L.Ed.2d 147 (1973) (holding that a woman's right to privacy includes the right to termi-

---

**1.** Ms. Cameron did have a right to receive a written statement describing the reasons for her dismissal, and a subsequent hearing before the Board, provided she complied with the guidelines in Ohio Rev.Code § 3319.11 (1990). The parties give no indication of whether Ms. Cameron pursued this avenue. Outside of § 3319.-11, Ms. Cameron had no other property rights concerning her teaching job.

nate a pregnancy); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (striking down a Connecticut statute criminalizing the purchase of contraceptives as violative of a person's right to privacy)).

 In viewing these cases holistically, the Supreme Court's precedent is clear. A woman has a constitutional privacy right to control her reproductive functions. Consequently, a woman possesses the right to become pregnant by artificial insemination.

The defendants argue that even if Ms. Cameron had a privacy right to become pregnant by artificial insemination, then the defendants did not violate her rights. The defendants assert that Hillsboro and the other defendants did not violate Ms. Cameron's rights because school officials would not have renewed her contract even if she had not exercised her constitutional rights. Brief for Defendants, doc. 12., at 9, (citing *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). However, factual disputes exist over the reasons behind the defendants nonrenewal of Ms. Cameron's contract. Accordingly, the defendants motion for summary judgment on the plaintiff's § 1983 claim for violations of her substantive due process rights is denied.

### Equal Protection

 The defendants next move for summary judgment on Ms. Cameron's § 1983 claim for the defendants' alleged violation of the equal protection clause. State action which discriminates on the basis of gender is subject to scrutiny under the equal protection clause. *See e.g., Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982). The defendants argue that they are entitled to summary judgment on the plaintiff's § 1983 equal protection claim because they did not treat the plaintiff differently from other similarly situated persons. Brief for Defendants, doc. 12, at 9 (citing *Rowland v. Mad River Local School Dist.*, 730 F.2d 444 (6th Cir.1984)).

The issue of whether the defendants did indeed treat Ms. Cameron differently is a question of fact. As discussed above, rea-sonable people could differ over the reasons for Ms. Cameron's nonrenewal. Accordingly, defendants' motion for summary judgment on plaintiff's § 1983 claim for equal protection violations is denied.

### Qualified Immunity

 The defendants further move for summary judgment under the doctrine of qualified immunity. Government officials are shielded from liability for civil damages when performing discretionary functions, provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For a plaintiff to sue a government official, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The doctrine of qualified immunity balances the needs of government officials to carry out their duties without the fear of potential litigation, with the interests of plaintiffs for vindication and compensation. *Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736; *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988).

 The question of whether qualified immunity attaches is a pure question of law for this Court to decide. *Garvie*, 845 F.2d at 649; *Donta v. Hooper*, 774 F.2d 716, 719 (6th Cir.1985), *cert. denied*, 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987). This Court holds that the contours of Ms. Cameron's rights to be free from sexual discrimination in the workplace were clearly established at the time the defendants did not renew her contract. Congress adopted Title VII in the Civil Rights Act of 1964. Title VII was amended in 1978 to prohibit discrimination on the basis of pregnancy. Thus, the prohibitions against sexual discrimination have been firmly entrenched in the law for a substantial amount of time. Moreover, one need not be an expert on Title VII to realize that discrimination against women in the work-

place is a legal taboo. Therefore, this Court holds that a reasonable official would have known that discriminating against a woman based upon her pregnancy by artificial insemination and her status as an unwed mother violated the woman's rights.[2] Accordingly, the defendants' motion for summary judgment on the basis of qualified immunity is denied.

### COUNT III

■■ The defendants next move for summary judgment on the plaintiff's state law claim for intentional infliction of emotional distress. In Ohio, a person can recover for intentional infliction of emotional distress when the defendant

> ... by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another....

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 369, 453 N.E.2d 666, 667 (1983); *Jackson v. Alert Fire & Safety Equip., Inc.*, 58 Ohio St.3d 48, 567 N.E.2d 1027 (1991) (reaffirming the *Yeager* test for intentional infliction of emotional distress).

Ms. Cameron has failed to demonstrate the requisite "extreme and outrageous" conduct. To satisfy this requirement in Ohio, a plaintiff must show that a defendant's conduct "so exceeds the bounds of decency that it is considered atrocious, completely outrageous and utterly intolerable in a civilized community." *Stepien v. Franklin*, 39 Ohio App.3d 47, 51, 528 N.E.2d 1324, 1330 (1987). In considering the facts in the light most favorable to the plaintiff, Ms. Cameron has only showed that she may have been dismissed for discriminatory reasons. No other substantive evidence exists that the defendants acted atrociously.

In one recent case before the Southern District of Ohio, the court considered a termination of an employee allegedly based upon the employee's age. *Hawley v. Dresser Industries, Inc.*, 737 F.Supp. 445 (S.D.Ohio 1990). The court held that "the

mere unjustifiable nature of a termination does not make it extreme and outrageous." *Id.* at 469. Thus, as a matter of law, Ms. Cameron has not demonstrated the requisite extreme and outrageous conduct.

Furthermore, Ms. Cameron has never demonstrated that she suffered from the requisite "serious" emotional distress. The court in *Gagne v. Northwestern National Insur. Co.* stated that serious emotional distress arises when "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." 881 F.2d 309, 317 (6th Cir.1989) (quoting *Paugh v. Hanks*, 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, 761 (1983)). In *Gagne*, the court held that the plaintiff had failed to establish serious emotional distress. The court noted that the plaintiff's only symptoms were sleepless nights, a withdrawn feeling, and the plaintiff's impression that she was not the same person. *Id.*

In the case before this Court, Ms. Cameron has not established "serious" emotional distress. The plaintiff only alleges that she suffered a "terrible traumatic effect" from the incident. *See* Brief for Plaintiff, at 27, (citing *Pauline Cameron Deposition*, at 45). Ms. Cameron, however, does not present evidence that she consulted medical or psychological experts for assistance. She does not present evidence as to the extent of her emotional distress. Therefore, the Court concludes that Ms. Cameron did not suffer the severity of emotional distress sufficient to make a claim in tort under Ohio law.

Accordingly, defendants' motion for summary judgment is granted on the plaintiff's claim for intentional infliction of emotional distress.

### COUNT IV

■■ The defendants next move for summary judgment on Count IV which Ms. Cameron asserts a claim for breach of con-

---

**2.** This Court is not engaging in a determination of the facts. However, in a motion for summary judgment, the Court has considered the facts in the light most favorable to the non-

moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

tract. The defendants claim that "Hillsboro fully honored the plaintiff's three-year limited contract." Brief for Defendants, doc. 12, at 13. However, Ms. Cameron's three year contract incorporated by reference the School Board's policy book. *Cameron Dep.*, ex. 1. Section 4150A of the Policy Book requires that the school complete a formal evaluation of a teacher's performance when that teacher is up for renewal. *Burton Dep.*, ex. 23, at 38. Ms. Cameron, however, received no formal evaluation. *Burton Dep.*, at 132. Therefore, evidence exists to withstand a summary judgment on the question of whether Hillsboro breached its contract with Ms. Cameron.

 Neither Mr. Temple nor Mr. Burton were parties to the contract between Ms. Cameron and Hillsboro. Therefore, Mr. Temple and Mr. Burton did not commit a breach of contract because they were not parties to the contract. *See Scanlon v. Stofer & Bro. Co.*, Nos. 55467, 55472, 1989 WL 69400, at *4, 1989 Ohio App. LEXIS 2528, at *7 (Cuyahoga June 22, 1989) ("[i]t is well recognized that interference with a contract by a person who is not a party to the contract ... does not specifically involve a claim of breach of contract.").

Accordingly, the defendants' motion for summary judgment on the plaintiff's claim for breach of contract is denied for Hillsboro, but summary judgment is granted for Mr. Temple and Mr. Burton on the plaintiff's claim for breach of contract.

## COUNT V

 The defendants also move for summary judgment on the plaintiff's cause of action for tortious interference with contract. Ms. Cameron only claims that Mr. Burton committed tortious interference with the plaintiff's contract with Hillsboro. Brief for Plaintiff, doc. 14, at 27, 28. In Ohio, tortious interference with contract occurs when the defendant causes a third party not to enter into a contract with the plaintiff. *See e.g., Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 551 N.E.2d 172 (1990), *reh'g denied*, 50 Ohio St.3d 709,

553 N.E.2d 691 (1990); *McLaurin v. Fischer*, 768 F.2d 98, 105 (6th Cir.1985).

In the case before the Court, a factual dispute exists concerning Mr. Burton's motivation for recommending to the Hillsboro School Board that they not renew Ms. Cameron's contract. The plaintiff claims Mr. Burton's motivation was discriminatory; whereas, the defendants claim that Mr. Burton's motivations were proper. *Cf.* Brief for Plaintiff, doc. 14, at 28, with Brief for Defendants, doc. 12, at 12.

Accordingly, summary judgment is denied for Mr. Burton on the plaintiff's claim that he tortiously interfered with the plaintiff's contract. However, summary judgment is granted for Mr. Temple and Hillsboro on the plaintiff's claim that they tortiously interfered with the plaintiff's contract, as the plaintiff makes no argument to the contrary.

## COUNT VI

 The defendants have moved for summary judgment on Count VI, in which the plaintiff alleges that she was wrongfully discharged. Ohio Rev.Code Ann. § 3319.11 (1990) governs the non-renewal of a teacher's conduct. However, Ohio Rev.Code Ann. § 4112.02(A) (1990) forbids an employer from discriminating on the basis of sex.

In Count VI, Ms. Cameron claims wrongful discharge. The defendants, however, did not *discharge* Ms. Cameron; rather, they did not *renew* her contract. *See* 39 O.Jur.3d *Employment Relations* § 47 (1991) (describing wrongful discharge as a cause of action an employee may pursue if he has been discharged prior to the end of his contract). It would contradict the plain meaning of the language to equate "wrongful discharge" with "nonrenewal." Therefore, we hold that Ms. Cameron does not have a claim for wrongful discharge. Accordingly, summary judgment is granted for the defendants on Count V.

## COUNT VII

 The defendants move for summary judgment in Count VII in which the plaintiff alleges sexual discrimination under

Ohio Rev.Code Ann. § 4112.02(A). Ohio Rev.Code § 4112.02(A) prohibits

... an unlawful discriminatory practice: ... [by] any employer, because of ... sex ... to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Under Ohio Rev.Code Ann. § 4112.99 (1990), a plaintiff may pursue an action for damages when a defendant has violated § 4112.02(A). *See Elek v. Huntington National Bank,* 60 Ohio St.3d 135, 573 N.E.2d 1056 (1991) (allowing a plaintiff to pursue an independent civil action for discrimination on the basis of physical disability). As discussed above, genuine issues of material facts still exist concerning the defendants' reasons for not renewing Ms. Cameron's contract. Accordingly, the defendants' motion for summary judgment on Count VII is denied.

█ The defendants also claim that Mr. Burton or Mr. Temple are entitled to summary judgment because they were not plaintiff's "employer" as defined in Ohio Rev.Code Ann. § 4112.01(A) (1990). However, § 4112.01(A) expressly defines "employer" to include "the state, or any political or civil subdivision thereof ... and any person acting in the interest of any employer, directly or indirectly." Ohio Rev.Code Ann. § 4112.01(A) (1990). Ms. Cameron has set forth facts amply showing that Mr. Burton and Mr. Temple were acting in the interest of Hillsboro Board of Education, concerning the case before the Court. Accordingly, Mr. Burton and Mr. Temple are not entitled to summary judgment on grounds that they were not plaintiff's "employer."

Accordingly, defendants' motion for summary judgment on Count I is denied. Defendants' motion for summary judgment on Count II is denied on the grounds of equal protection, substantive due process, and qualified immunity, but granted on procedural due process. The Court grants the defendants' motion for summary judgment on Count III. The defendants' motion for summary judgment on Count IV is denied to Hillsboro, but granted to Mr. Temple and Mr. Burton. The defendants' motion for summary judgment on Count V is denied to Mr. Burton, but granted to Mr. Temple and Hillsboro. The defendants' motion on Count VI is granted. The defendants' motion for summary judgment on Count VII is denied.

SO ORDERED.