[Cite as *Hammonds v. Beavercreek City Schools*, 2021-Ohio-4022.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

|  |  |  |
|---|---|---|
| WILLIAM HAMMONDS | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2021-CA-12 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-342 |
| | : | |
| | : | (Civil Appeal from |
| BEAVERCREEK CITY SCHOOLS, et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of November, 2021.

. . . . . . . . . . .

DAVID M. DUWEL, Atty. Reg. No. 0029583, 130 West Second Street, Suite 2101, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

BERNARD W. WHARTON, Atty. Reg. No. 0063487, 600 Vine Street, Suite 800, Cincinnati, Ohio 45202
      Attorney for Defendants-Appellees

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Plaintiff-appellant, William Hammonds, appeals from a judgment of the Greene County Court of Common Pleas, which granted summary judgment for defendant-appellees, Beavercreek City School District Board of Education et al., on Hammonds's claim alleging wrongful discharge from his position as an assistant principal in violation of public policy. His position as a teacher was unaffected by the loss of the administrative position. Finding no error, we affirm.

## I. Factual and Procedural Background

{¶ 2} In 2009, Hammonds was hired as a teacher by the Beavercreek City School District Board of Education. For the 2015-2016 school year, the Board gave him a one-year administrative contract to be an assistant principal at Beavercreek High School, where Jeff Jones was the principal. In October, Jones put Hammonds on a professional growth plan to help Hammonds evaluate and review teachers, as well as to help him engage the staff and community in the evolving use of technology in the school district.

{¶ 3} The following January, Jones placed Hammonds on a performance-improvement plan, precipitated by Hammonds's failure to keep confidential sensitive information related to an accusation of inappropriate conduct by a staff member with a student. Hammonds had told former teaching colleagues in the building about the circumstances of the allegations. The school believed that Hammonds's failure to keep this information confidential violated the requirements of his job. Jones was also concerned about Hammonds's lack of communication with him in the situation. The performance-improvement plan focused on the performance standards in the Ohio Principal Evaluations System, which addresses how principals uphold and model

professional ethics, policies, and legal codes of conduct.

{¶ 4} The Board renewed Hammonds's administrative contract for the 2016-2017 school year. Assistant Superintendent Jason Enix was assigned to work with Jones to evaluate Hammonds that year. The school had an ongoing concern about disparaging comments that Hammonds would make to other administrators and staff members about Jones as a supervisor. Superintendent Paul Otten had given Hammonds a written reprimand for his conduct and directed him to comply with the superintendent's expectations, but Hammonds continued to make disparaging comments.

{¶ 5} An incident occurred in August 2016 involving Hammonds in a classroom at the high school—Hammonds's former classroom. A gas jet behind a microwave in the room had been turned on. The room had been a science room but was converted to a special-needs classroom for the 2016-2017 school year. Jones investigated the incident and wrote a report. He interviewed staff members, several of whom said that Hammonds had acted unprofessionally in the room's transition. They told Jones stories about Hammonds's refusing to remove items from cabinets and placing chains and locks around them, making it impossible for anyone else to clean them out. Jones's report revealed that Hammonds had a poor relationship with the science department and the special-needs department.

{¶ 6} In September 2016, Jones put Hammonds on a second performance-improvement plan in response to ongoing complaints that Hammonds failed to support the school staff, Board policy, and leadership decisions. The plan required Hammonds to improve under three performance standards of the Ohio Principal Evaluations System. Hammonds filed a written objection to this plan, stating that it was based solely on hearsay

and Jones's opinions.

{¶ 7} Around the same time, Superintendent Otten directed Deron Schwieterman, Director of Human Resources for the Beavercreek City School District, to investigate staff complaints about Hammonds, including complaints of intimidating and harassing behavior toward staff and students, causing a hostile work and educational environment through unprofessional behavior, lack of professionalism, disregard for directives from supervisors, and inappropriate use of sick time. Schwieterman completed a summary of his investigation on October 20, 2016. Based on interviews with Hammonds, other administrators, and teachers, Schwieterman concluded that Hammonds had acted unprofessionally and inappropriately in multiple situations, had acted to undermine Jones's leadership, had violated ethics policies that applied to administrators in the school district, lacked good professional judgment, and failed to meet the responsibilities or the essential functions of an assistant principal.

{¶ 8} Superintendent Otten reviewed Schwieterman's investigation and agreed that Hammonds had failed to follow directives, failed to maintain professionalism, and failed to maintain confidential information. Otten further concluded that Hammonds had acted in an unprofessional manner on several occasions and that Hammonds's behavior had led to his inability to perform the duties of his position as an assistant principal in a satisfactory manner. Otten found that Hammonds had violated several Board policies and requirements of his job and had run afoul of his (Otten's) expectations for school administrators. Otten issued Hammonds a written reprimand and advised him that any further misconduct may result in additional discipline, including termination of his employment.

**{¶ 9}** On November 8, 2016, Hammonds met with Schwieterman. During the meeting, Hammonds discussed filing a formal complaint for misconduct against Jones with the Office of Professional Conduct at the Ohio Department of Education (DOE). Hammonds asked whether the school district would self-report Jones, and Schwieterman told Hammonds that the school "always get[s] notified when someone is reported on." (Hammonds Affidavit, ¶ 2).

**{¶ 10}** After his meeting with Schwieterman, Hammonds retained an attorney, who wrote a letter to Superintendent Otten. The letter, dated November 30, 2016, stated that Hammonds had complained to the school district of abuse, harassment, and mistreatment by Jones and demanded, among other things, that Hammonds not be supervised by Jones or be required to work with Jones without a third-party present, that the performance-improvement plans be removed from Hammonds's personnel file, and that the school self-report Jones to the DOE for his actions and unprofessionalism. The letter stated that if the school did not report Jones to the DOE, Hammonds "will have to report Mr. Jones himself and point out that the Board and superintendent failed and refused to [self-report.]"

**{¶ 11}** Superintendent Otten responded with a letter of his own, dated December 22, 2016. As to the demand that the school report Jones to the DOE, Otten refused, in no uncertain terms: "Eighth, the District does not agree that Mr. Jones should be reported to the Ohio Department of Education and will not do so." Hammonds's attorney, in a letter dated January 20, 2017, told Otten, "As to your eighth point we accept that as your opinion and final determination as to your actions." There is no mention of Hammonds filing or planning to file a complaint with the DOE.

{¶ 12} Nevertheless, sometime before the end of February 2017, Hammonds did file a formal complaint against Jones with the DOE. (The DOE acknowledged receipt of Hammonds's complaint in a letter dated February 27, 2017.) Hammonds did not send the complaint to anyone at the school, and no one ever talked to him about the complaint. Neither Schwieterman nor anyone else in the school district was contacted about the DOE complaint. Indeed, Schwieterman, Otten, and Jones did not become aware of the complaint until at least October.

{¶ 13} By the end of the 2016-2017 school year, Jones had concluded that Hammonds was ineffective as an assistant principal. Both he and Assistant Superintendent Enix recommended to Superintendent Otten that Hammonds's administrative contract not be renewed. Otten, in turn, recommended to the Board that it not renew Hammonds's administrative contract. The Board adopted a resolution not to renew the contract when the contract for the 2016-2017 school year expired. Hammonds was given notice of the intent to not renew his administrative contract and was later sent a letter notifying him of the Board's decision not to renew his assistant-principal contract. Hammonds returned to his former position as a teacher for the school.

{¶ 14} On June 16, 2020, Hammonds refiled a complaint in the Green County Court of Common Pleas against the Beavercreek City School District Board of Education, Paul Otten, Jeffrey Jones, and five school board members (individually).[1] He asserted claims of wrongful discharge in violation of public policy and wrongful discharge based on age discrimination, R.C. 4112.14. The defendants moved for summary judgment. On April

---

[1] Hammonds first filed the complaint on October 20, 2017. That complaint was dismissed without prejudice on June 17, 2019.

21, 2021, the trial court granted summary judgment for the defendants and dismissed Hammonds's claims.

{¶ 15} Hammonds appealed.

## II. Analysis

{¶ 16} The sole assignment of error alleges:

The Trial Court erred when it granted Appellee's motion for summary judgment since there were issues of material fact that should be determined at trial on the merits.

In this assignment of error, Hammonds argues only that the appellees were not entitled to summary judgment on his claim for wrongful discharge in violation of public policy.

{¶ 17} "Because this case was decided upon summary judgment, we review this matter de novo, governed by the standard set forth in Civ.R. 56." (Citation omitted.) *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Under Civ.R. 56(C), summary judgment is proper if it is shown "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 18} "The employment-at-will doctrine, the rule that general or indefinite hiring is terminable at the will of either party for any cause or no cause, is the traditional rule in Ohio. *Collins v. Rizkana*, 73 Ohio St.3d 65, 67-68, 652 N.E.2d 653 (1995). The tort of wrongful termination in violation of public policy, also known as a *Greeley* claim, is an

exception to the employment-at-will doctrine." *House v. Iacovelli*, 159 Ohio St.3d 466, 2020-Ohio-435, 152 N.E.3d 178, ¶ 11, citing *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 234, 551 N.E.2d 981 (1990).

{¶ 19} To succeed on a *Greeley* claim, a plaintiff must establish four elements:

(1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"), and (4) that the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element").

*Miracle v. Ohio Dept. of Veterans Servs.*, 157 Ohio St.3d 413, 2019-Ohio-3308, 137 N.E.3d 1110, ¶ 12; *see Collins* at 69-70. "The clarity and jeopardy elements involve questions of law; the causation and overriding-justification elements involve questions of fact." *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 9, citing *Collins* at 70. In this appeal it is the factual elements—causation and overriding justification—that are before us.

*Hammonds's was not an at-will employee*

{¶ 20} The Board's first argument is that Hammonds could not bring an action for wrongful discharge in violation of public policy, because he was not an at-will employee. We conclude that the Board is right.

{¶ 21} The Ohio Supreme Court has held that "[i]n order for an employee to bring a cause of action pursuant to *Greeley v. Miami Valley Maintenance Contractors, Inc.* that employee must have been an employee at will." *Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St.3d 254, 652 N.E.2d 948 (1995), syllabus. Hammonds plainly was not an at-will employee. The terms and conditions of his employment were governed by an administrative contract. *Compare id.* at 258 (holding that a union member was not an employee at will, because "the terms of her employment relationship were governed by a collective bargaining agreement"). Hammonds was "outside the class of employees for whom *Greeley* provides protection." *Id*.

{¶ 22} Hammonds also could not bring this cause of action because he was not discharged from his employment. Courts have held that the non-renewal of a contract is not equivalent to discharge. *E.g.*, *Cameron v. Bd. of Edn. of Hillsboro, Ohio, City School Dist.*, 795 F.Supp. 228, 239 (S.D.Ohio 1991) (holding that an employee did not have a claim for wrongful discharge, because defendants did not *discharge* her but rather did not *renew* her contract), citing 39 Ohio Jurisprudence 3d, Employment Relations, Section 47 (1991) (describing wrongful discharge as a cause of action an employee may pursue if she has been discharged before the end of her contract); *Sexstella-Wright v. Sandusky City School Dist.*, Case No. 1:05cv1136, 2006 WL 3526791, *12 (N.D.Ohio 2006), citing *Cameron* ("Nor can an employee whose terms and conditions of employment are governed by contract bring a public policy wrongful termination claim because non-renewal is not termination."); *Doerter v. Bluffton College*, 98 Ohio App.3d 95, 98, 647 N.E.2d 876 (3d Dist.1994) (finding that "plaintiff was never actually discharged" where the plaintiff was employed under a one-year contract and was not terminated during the term

of that contract; defendant exercised its right not to renew the contract for an additional one-year term). As one court has said, "It would contradict the plain meaning of the language to equate 'wrongful discharge' with 'nonrenewal.' " *Cameron* at 239.

{¶ 23} Despite the fact that Hammonds was precluded from making a public policy claim, we recognize that the Board did not make either of these arguments in the trial court. Consequently we do not decide this appeal on either issue. *See State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997) ("A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below."). Instead, we assume at-will employment and discharge and consider the two factual elements of Hammonds's *Greeley* claim—causation and overriding justification.

*Causation*

{¶ 24} To establish causation, Hammonds must prove that the non-renewal of his contract was retaliatory. *See Sutton*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, at ¶ 10. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' " *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001).

{¶ 25} Hammonds contends that it was his filing of the complaint with the DOE that led to the Board's decision not to renew his administrative contract. Three months

separated Hammonds's filing of the DOE complaint and the Board's decision not to renew his contract, a temporal proximity that we would not describe as "very close." More important, though, is the utter lack of evidence showing any causal connection, let alone retaliation, between the DOE complaint and the Board's decision. The evidence shows that no one at the school was even aware that Hammonds had filed the complaint with the DOE until after he filed this lawsuit. Schwieterman averred that neither he nor anyone else in the school district was contacted about the DOE complaint and that no one was aware that the complaint had been filed until Hammonds filed his lawsuit. In answers to interrogatories, Otten and the Board stated that they had no knowledge of the DOE complaint until the lawsuit was filed. Likewise, Jones stated in his answers to interrogatories that he was unaware that Hammonds had filed the DOE complaint.

{¶ 26} Hammonds contends that it was reasonable to infer retaliation from the extremely acrimonious relationship between him and Jones. Hammonds states that, upon learning of the complaint, Jones would have been motivated not to renew Hammonds's contract. But the relationship had deteriorated well before the filing of the DOE complaint. Hammonds was already communicating to the Superintendent through a lawyer. Moreover there was no evidence that Jones did not want to renew Hammonds's contract because of the DOE complaint. Given the evidence and circumstances, we find it was not a reasonable inference to conclude that Hammond's contract was not renewed because of his complaint to the DOE.

{¶ 27} Hammonds did not provide any evidence showing that it was because he filed the DOE complaint that the Board decided not to renew his contract. The evidence did show that Hammonds threatened to file a complaint with the DOE, but there was

simply no evidence that anyone knew that he had actually done so before the Board's non-renewal decision. In sum, there was no genuine issue as to whether the Board decided not to renew Hammonds's contract in retaliation for his filing the complaint against Jones.

*Overriding justification*

{¶ 28} To establish the overriding-justification element, Hammonds had to prove that the Board lacked an overriding legitimate business justification for not renewing his administrative contract. *See Sutton*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, at ¶ 10.

{¶ 29} According to Otten and the Board's answer to an interrogatory, "his [Hammonds's] administrator's contract was not renewed based [on] evaluations of him as an assistant principal." The evidence was full of legitimate reasons for not renewing Hammonds's contract. Hammonds was placed on multiple growth and improvement plans during his two year tenure as an assistant principal; he was found to be ineffective and unprofessional on multiple occasions; he undermined his supervisors and their decisions, and he undermined Board policy; he failed to follow directives; he failed to maintain confidential information; he was written up for making derogatory remarks about Jones and persisted in the conduct after being reprimanded for it; and multiple staff members and one parent made complaints about Hammonds's lack of professionalism. There was no evidence from which one could reasonably find that the Board's articulated reason for not renewing Hammonds's contract was pretextual.

{¶ 30} Likely because the evidence showed so many legitimate reasons for not renewing his contract, Hammonds does not really address this element in his brief. He

argues instead that there was an issue of fact as to whether the school district knew about the DOE complaint beforehand. Although we disagree with that argument, even if the evidence did show that district employees knew of the complaint, Hammonds still failed to show a causal connection between that knowledge and the decision not to renew his contract.

{¶ 31} There was no genuine issue as to whether the Board lacked an overriding legitimate business justification for not renewing Hammonds's administrative contract.

### III. Conclusion

{¶ 32} The trial court properly entered summary judgment for the Board. Hammonds's sole assignment of error is overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

David M. Duwel
Bernard W. Wharton
Hon. Adolfo A. Tornichio