SUTTON, APPELLEE, *v.* TOMCO MACHINING, INC., APPELLANT.

[Cite as *Sutton v. Tomco Machining, Inc.,*

**129 Ohio St.3d 153, 2011-Ohio-2723.]**

*Common-law tort claim for wrongful discharge in violation of public policy —*
*R.C. 4123.90 expresses a clear public policy prohibiting retaliatory*
*employment action against injured employees — Ohio recognizes a*
*common-law tort claim for wrongful discharge in violation of public*
*policy when an injured employee suffers retaliatory employment action*
*after injury on the job but before the employee files a workers'*
*compensation claim or institutes or pursues a workers' compensation*
*proceeding — To establish causation, a plaintiff who alleges wrongful*
*discharge in violation of public policy as expressed in R.C. 4123.90 must*
*prove that the adverse employment action was retaliatory, which*
*requires proof of a nexus between the adverse employment action and*
*the potential workers' compensation claim — The remedies available for*
*wrongful discharge in violation of the public policy against retaliatory*
*employment actions as expressed in R.C. 4123.90 are limited to those*
*listed in R.C. 4123.90.*

(No. 2010-0670 — Submitted February 15, 2011 — Decided June 9, 2011.)

APPEAL from the Court of Appeals for Montgomery County, No. 23416,

186 Ohio App.3d 757, 2010-Ohio-830.

_____

**SYLLABUS OF THE COURT**

1. R.C. 4123.90 expresses a clear public policy prohibiting retaliatory
   employment action against injured employees.

2. Ohio recognizes a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after injury on the job but before the employee files a workers' compensation claim or institutes or pursues a workers' compensation proceeding.

3. To establish causation, a plaintiff who alleges wrongful discharge in violation of public policy as expressed in R.C. 4123.90 must prove that the adverse employment action was retaliatory, which requires proof of a nexus between the adverse employment action and the potential workers' compensation claim.

4. The remedies available for wrongful discharge in violation of the public policy against retaliatory employment actions as expressed in R.C. 4123.90 are limited to those listed in R.C. 4123.90.

_____

**O'CONNOR, C.J.**

{¶ 1} The issue presented in this appeal is whether Ohio should recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after injury on the job but before the employee files a workers' compensation claim or institutes, pursues, or testifies in any workers' compensation proceeding.[1] We answer in the affirmative and further hold that the available remedies are limited to those listed in R.C. 4123.90. Accordingly, we affirm the court of appeals' holding that recognized the wrongful-discharge claim but modify that holding by recognizing that the available remedies are limited to those listed in R.C. 4123.90.

_____

1. For ease of discussion, the phrase "the employee files a workers' compensation claim or institutes, pursues, or testifies in any workers' compensation proceeding," which is the language used in R.C. 4123.90, is shortened to "the employee files, institutes, or pursues a workers' compensation claim."

## I. Relevant Background

{¶ 2}   Early in the morning on April 14, 2008, DeWayne Sutton injured his back while disassembling a chop saw on the job at Tomco Machining, Inc. ("Tomco").[2]   He reported the injury to Tomco's president, Jim Tomasiak.  Within one hour of being told of the injury, Tomasiak fired Sutton, who had been an employee of Tomco's for two and one-half years.  Tomasiak did not give Sutton a reason for the firing but did state that the firing was not because of Sutton's work ethic or job performance or because Sutton had broken any work rule or company policy.

{¶ 3}   On July 1, 2008, Sutton sent a letter to Tomco that informed it of his intention to file a claim under R.C. 4123.90 alleging unlawful retaliation.  On September 18, 2008, Sutton filed suit against Tomco and alleged that Tomco fired him to avoid having Sutton considered an employee when he filed for workers' compensation and thereby preclude a claim and avoid paying higher workers' compensation premiums.  Sutton asserted two claims for relief: a statutory claim for unlawful retaliation under R.C. 4123.90 and a tort claim for wrongful discharge in violation of public policy.

{¶ 4}   Tomco moved for judgment on the pleadings, pursuant to Civ.R. 12(C).  The trial court granted the motion as to both claims.  Sutton appealed.

{¶ 5}   The Second District Court of Appeals affirmed the judgment in part and reversed it in part.  Specifically, it affirmed the judgment against Sutton on the statutory claim on the grounds that R.C. 4123.90 does not expressly apply to employees, like Sutton, who are retaliated against after they are injured but before they file, institute, or pursue a workers' compensation claim.  As to the

---

2.  Because this case comes to us on appeal from a judgment on the pleadings in Tomco's favor, the facts are recited from Sutton's complaint. *State ex rel. Midwest Pride IV, Inc. v Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (holding that when deciding a motion for judgment on the pleadings, the court must construe the material allegations in the complaint in favor of the nonmoving party as true).

public-policy claim, it reversed the judgment against Sutton, holding that the discharge violated public policy as expressed in R.C. 4123.90. The court of appeals did not address the issue of remedies.

{¶ 6} We accepted Tomco's discretionary appeal. *Sutton v. Tomco Machining, Inc.*, 126 Ohio St.3d 1512, 2010-Ohio-3331, 930 N.E.2d 331.

## II. Analysis

### A. Exception to Employment-at-Will Doctrine

{¶ 7} The traditional rule in Ohio is that at-will employment may be terminated by the employer at any time for good cause, bad cause, or no cause at all, and therefore, discharge of an employee does not give rise to an action for damages. *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114. This is commonly known as the employment-at-will doctrine, which was judicially created and thus may be judicially abolished. *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 161, 677 N.E.2d 308.

{¶ 8} In 1990, this court recognized an exception to the employment-at-will doctrine that applies when an at-will employee is discharged or disciplined for reasons that contravene clear public policy expressed by the legislature in its statutes. *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraph one of the syllabus; *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus ("Clear public policy" sufficient to justify an exception to the employment-at-will doctrine may be found in statutory enactments, the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law). The basis of this exception is that when the General Assembly enacts laws that are constitutional, the courts may not contravene the legislature's expression of public policy. *Painter* at 385. It is our responsibility to determine when public-policy exceptions must be recognized and to set the boundaries of such exceptions. *Kulch* at 161. In this case, the dissent mischaracterizes our opinion as

*establishing* public policy in Ohio. To the contrary, we simply recognize that the judicial doctrine of employment at will must yield when it contravenes the public policy as established by the General Assembly in R.C. 4123.90.

{¶ 9} A cause of action for wrongful discharge in violation of public policy sounds in tort. *Greeley* at paragraph three of the syllabus. A plaintiff must prove the following elements to prevail on such a claim: (1) a clear public policy exists and is manifested in a state or federal constitution, in statute or administrative regulation, or in the common law (the clarity element), (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element), (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element), and (4) the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element). *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653. The clarity and jeopardy elements involve questions of law; the causation and overriding-justification elements involve questions of fact. Id. at 70. We will now address these elements as they apply to Sutton's claim.

1. Causation and Overriding-Justification Elements Are Not Before Us

{¶ 10} This case is before us on an appeal from a judgment on the pleadings, which is a mechanism that is used to resolve questions of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931. Consequently, the factual elements, i.e. causation and overriding justification, are not before us. Rather, in order to prevail on his claim, Sutton must prove them on remand. To establish the causation element, Sutton must prove that his discharge was retaliatory. Because a discharge could be for reasons other than those related to workers' compensation, such as a reasonable suspicion that the injury was not job related, a disregard by the employee for the employer's safety rules, or an immediate need for a replacement employee, no presumption of

retaliation arises from the fact that an employee is discharged soon after an injury. Rather, the retaliatory nature of the discharge and its nexus with workers' compensation must be established by a preponderance of the evidence. To establish the overriding-justification element, Sutton must prove that Tomco lacked an overriding business justification for firing him. Accordingly, we consider only the clarity and jeopardy elements.

### 2. The Clarity Element

{¶ 11} Under the clarity analysis, we must determine whether there exists in Ohio a public policy against retaliatory employment actions like the one alleged by Sutton. "Clear public policy" sufficient to justify an exception to the employment-at-will doctrine may be expressed by the General Assembly in statutory enactments, as well as in other sources, such as the Ohio and United States constitutions, administrative rules and regulations, and the common law. *Painter*, 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus. In this case, Sutton identifies R.C. 4123.90 as the source of the public policy; therefore, the focus of our analysis is R.C. 4123.90 and the General Assembly's intention in enacting it.

{¶ 12} In determining legislative intent, we must first look to the statutory language and the purpose to be accomplished. See *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419, 704 N.E.2d 1217, citing *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund* (1994), 69 Ohio St.3d 409, 411, 632 N.E.2d 1292.

{¶ 13} R.C. 4123.90 provides: "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."

**{¶ 14}** R.C. 4123.90 does not expressly prohibit retaliation against injured employees who have not yet filed, instituted, or pursued a workers' compensation claim. But it does expressly prohibit retaliation against injured workers who have filed, instituted, or pursued a workers' compensation claim. Essentially, a gap exists in the language of the statute for conduct that occurs between the time immediately following injury and the time in which a claim is filed, instituted, or pursued. Sutton's firing occurred in that gap. The parties disagree as to whether the public policy underlying R.C. 4123.90 justifies the creation of an exception to the employment-at-will doctrine to protect such employees.

**{¶ 15}** Although we have never before directly addressed whether the public policy underlying R.C. 4123.90 protects such employees, we have addressed whether the statute itself protects a similarly situated employee. In *Bryant v. Dayton Casket Co.* (1982), 69 Ohio St.2d 367, 23 O.O.3d 341, 433 N.E.2d 142, we addressed whether an employee's expression of an intent to pursue a workers' compensation claim was sufficient to satisfy R.C. 4123.90's requirement that an employee "institute" or "pursue" a proceeding and whether the employee was therefore protected by the statute against retaliation. Id. at 370. The relevant facts are that the employee, Bryant, cut his finger with a saw during his second day of employment with Dayton Casket Company, informed someone within the company of the injury, and was thereafter fired. Id. at 368. At the time of his dismissal, no workers' compensation proceedings had actually been pursued or instituted. Id. at 369. The employee sued and alleged that his firing was in retaliation for his pursuit of a workers' compensation claim. Id. at 368. He argued that his informing someone within the company of the injury was sufficient to satisfy the R.C. 4123.90 requirement that he pursue a claim. Id. at 370. We held that a mere expression of an intention to pursue a claim is not "pursuit" of a claim and, therefore, Bryant was not protected from retaliatory firing under the statute. Id. at 371.

**{¶ 16}** The concurring opinion cautioned that the court was not interpreting the statute to mean that the actual filing of a claim was the only means by which a workers' compensation proceeding could be instituted or pursued. Id. at 372, 23 O.O.3d 341, 433 N.E.2d 142 (W. Brown, J., concurring). "If such a requirement was mandated, an employer could [preemptively] fire the claimant and thus avoid the consequences of R.C. 4123.90." Id. The concurrence admonished employers not to read the majority opinion as endorsing "a footrace, the winner being determined by what event occurs first—the firing of the employee or the filing of the claim with the bureau." Id. at 372-373. Such a reading of the statute, the concurring justice stated, would "frustrate the legislative intent as evinced in R.C. 4123.90." Id. at 372. Shortly thereafter, in *Roseborough v. N.L. Industries* (1984), 10 Ohio St.3d 142, 143, 10 OBR 478, 462 N.E.2d 384, this court ratified the caution expressed by the concurring opinion in *Bryant*.

**{¶ 17}** Like Bryant, Sutton did not file, institute, or pursue a workers' compensation claim before he was fired. Even so, *Bryant* is not dispositive here, because, as explained below, *Bryant* was decided before this court recognized the public-policy exception to the employment-at-will doctrine.

**{¶ 18}** Eight years after we decided *Bryant*, we recognized the tort of wrongful discharge in violation of public policy. *Greeley*, 49 Ohio St.3d 228, 551 N.E.2d 981, at paragraph three of the syllabus. In doing so, we also held that "[h]enceforth, the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy." Id. at paragraph two of the syllabus. Therefore, *Greeley* and its progeny govern resolution of Sutton's claim for wrongful discharge in violation of public policy. *Bryant* governs only statutory claims, and Sutton's statutory claim is not before us.

{¶ 19} Tomco asserts that *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, controls here. But like *Bryant*, *Bickers* is not dispositive. In *Bickers*, we held that an employee who was receiving temporary total disability benefits did not have a common-law wrongful-discharge claim against her employer for a *nonretaliatory* discharge. Id. at the syllabus and ¶ 17. Bickers was injured on the job and, as a result, was receiving temporary total disability payments. Id. at ¶ 3. Following the injury, Bickers experienced periods of inability to work. Id. Eight years after the injury, the employer fired her. Id. Thereafter, she filed suit against the employer and claimed that while she was receiving temporary total disability benefits, she was fired, and therefore, she was wrongfully discharged in violation of the public policy underlying R.C. 4123.90. Id. at ¶ 4.

{¶ 20} In determining whether Bickers had a cause of action for wrongful discharge, we reviewed the origin and nature of the workers' compensation system. Id. at ¶ 18. We explained that as the arbiter of public policy, the General Assembly had decided when to require an employer to hold an injured worker's position open. Id. at ¶ 20-24. In making its decision, the General Assembly balanced the competing interests of employers and employees. Id. at ¶ 23. Ultimately, "the General Assembly chose to proscribe *retaliatory discharges only*." (Emphasis added.) Id. Accordingly, we deferred to the General Assembly when we held that Bickers did not have a wrongful-discharge claim for a nonretaliatory firing. Id.

{¶ 21} Tomco argues that *Bickers* stands for the proposition that no common-law action for wrongful discharge in violation of R.C. 4123.90 exists for nonretaliatory *or* retaliatory discharges. Tomco's argument thus ignores the substance of *Bickers* and strictly applies the broad language of the syllabus outside the context of that case. That flaw is fatal to Tomco's argument.

**{¶ 22}** We find that the General Assembly did not intend to leave a gap in protection during which time employers are permitted to retaliate against employees who might pursue workers' compensation benefits. The alternative interpretation—that the legislature intentionally left the gap—is at odds with the basic purpose of the antiretaliation provision, which is "to enable employees to freely exercise their rights without fear of retribution from their employers." *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, ¶ 43. The General Assembly certainly did not intend to create the footrace cautioned against in *Roseborough*, 10 Ohio St.3d at 143, 10 OBR 478, 462 N.E.2d 384, which would effectively authorize retaliatory employment action and render any purported protection under the antiretaliation provision wholly illusory. Therefore, it is not the public policy of Ohio to permit retaliatory employment action against injured employees in the time between injury and filing, instituting, or pursuing workers' compensation claims. Rather, R.C. 4123.90 expresses a clear public policy prohibiting retaliatory employment action against injured employees, including injured employees who have not filed, instituted, or pursued a workers' compensation claim.

**{¶ 23}** The dissent misapplies *Bickers,* 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201. The key distinction between *Bickers* and this case is the nature of the alleged discharge: nonretaliatory versus retaliatory. The dissent attempts to diminish the comparative timing of the firings. When Bickers was fired, she had already successfully sought workers' compensation. Therefore, Bickers was protected by the statute from retaliatory firing. In *Bickers*, we determined whether the General Assembly also intended to proscribe the firing of an injured employee for reasons not related to the workers' compensation claim. We recognized that the General Assembly intended to proscribe only *retaliatory* firings. Id. at ¶ 25, quoting *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572.

**{¶ 24}** Likewise, in this case, we recognize that the General Assembly intended to proscribe retaliatory firings. We are called upon, however, to determine what, if anything, the General Assembly intended in leaving the gap in protection against retaliatory firing immediately following injury but before the employee files a workers' compensation claim or institutes or pursues a workers' compensation proceeding. *Bickers* did not present this issue. If we were to decline to address it now, we would leave Sutton and others similarly situated unprotected from retaliatory firings, which is plainly not the intent of the General Assembly.

### 3. The Jeopardy Element

**{¶ 25}** Under the jeopardy analysis, we must determine whether a retaliatory dismissal of an employee who is injured on the job but who has not yet filed, instituted, or pursued a workers' compensation claim jeopardizes the public policy against retaliatory employment actions as expressed in R.C. 4123.90. See *Collins*, 73 Ohio St.3d at 70, 652 N.E.2d 653. In cases where the right and remedy are part of the same statute that is the sole source of the public policy opposing the discharge, the test for determining the jeopardy element is whether the remedy provisions adequately protect society's interest by discouraging the wrongful conduct. *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, at ¶ 26. Therefore, the test in this case is whether R.C. 4123.90 provides adequate remedies to protect the public interest against retaliatory firings.

**{¶ 26}** The remedies portion of R.C. 4123.90 provides: "*Any such employee* may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action

11

taken, and payments received pursuant to section 4123.56 and Chapter 4141. of the Revised Code plus reasonable attorney fees." (Emphasis added.)

{¶ 27} The phrase "[a]ny such employee" is a limitation on the class of people that can avail itself of the remedies set out in R.C. 4123.90. By its express terms, R.C. 4123.90 does not apply to Sutton or others who experience retaliatory employment action after being injured but before they file, institute, or pursue a workers' compensation claim. Consequently, a claim for retaliatory discharge in those circumstances is not cognizable under the statute. It is precisely this reason that Sutton's statutory claim failed. Therefore, R.C. 4123.90 plainly does nothing to discourage the wrongful conduct that Sutton alleges. Accordingly, we hold that R.C. 4123.90 does not provide adequate remedies and thus the jeopardy element is satisfied.

{¶ 28} Because the clarity and jeopardy elements are satisfied, Ohio recognizes a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after injury on the job but before the employee files a workers' compensation claim or institutes or pursues a workers' compensation proceeding.

*B. Remedy*

{¶ 29} We next determine what remedies are available to Sutton if he proves retaliatory discharge. A review of our decision in *Collins* is helpful.

{¶ 30} In *Collins*, we recognized a common-law tort for wrongful discharge in violation of the public policy against sexual harassment. Id. at the syllabus. In that case, Collins had been an employee of a veterinarian for a number of years. Id. at 67. She alleged that the veterinarian sexually harassed her throughout her employment and that when she finally disclosed the harassment to a co-worker, the veterinarian retaliated against her by, among other things, reducing her pay. Id. at 66. Those adverse actions eventually forced her to quit. Id. In response to Collins's complaint for wrongful discharge, the veterinarian

moved for summary judgment, which was entered in his favor. Id. at 67. The trial court reasoned that R.C. 4112.02, which prohibits sex-based discrimination against employees, did not apply to the veterinarian, because he did not satisfy the statutory definition of "employer." Id.

{¶ 31} On appeal, this court recognized the clear public policy against sexual abuse and sexual harassment expressed in R.C. 2907.06 (prohibiting sexual imposition) and R.C. Chapter 4112 (prohibiting sex-based discrimination). Id. at 70 and 72, 652 N.E.2d 653. R.C. 2907.06, as a criminal statute, does not provide civil remedies. And R.C. Chapter 4112's remedies were unavailable to Collins because the term "employer" is defined under that chapter as "any person employing four or more persons within the state," R.C. 4112.01(A)(2), and the veterinarian employed fewer than four people, *Collins* at 74. Therefore, we held that the sources of the public policy did not provide adequate remedies to protect the public interest against sexual harassment in the workplace, because they did not discourage sexually motivated harassment of employees of small businesses. Id. Therefore, we held that the jeopardy element was also satisfied. Id.

{¶ 32} We further held that the full spectrum of common-law remedies was available to plaintiffs like Collins because the legislature did not intend to limit the remedies to those provided in R.C. Chapter 4112. *Collins*, 73 Ohio St.3d at 73-74, N.E.2d 653. In considering the issue, we relied on *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, in which we held that "R.C. Chapter 4112 was intended to add protections for victims of sexual harassment rather than reduce the protections and remedies for such conduct." Id. at paragraph one of the syllabus. In other words, R.C. Chapter 4112 was intended to supplement, not supplant, the common-law protections and remedies. *Collins* at 74. Therefore, "R.C. Chapter 4112 does not operate to preclude [the wrongful-discharge] claim, [so] there is no need to consider whether the remedies contained in R.C. Chapter 4112 should serve as a basis to reject [the]

claim." Id. Accordingly, we recognized the wrongful-discharge claim and held that the full panoply of common-law remedies was available. Id.

{¶ 33} In contrast, the Workers' Compensation Act plainly provides limited, exclusive remedies. Before the enactment of the Workers' Compensation Act, common-law tort principles governed recovery for work-related injuries. *Bickers*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, at ¶ 18, citing Fulton, Ohio Workers' Compensation Law (2d Ed.1998) 3, Section 1.2. Ohioans adopted the constitutional provision that authorized the General Assembly to establish the workers' compensation program. Section 35, Article II, Ohio Constitution. In 1913, the General Assembly exercised the authority conferred therein and passed the Workers' Compensation Act. *Bickers* at ¶ 19. "This statutory framework supplanted, rather than amended or supplemented, the unsatisfactory common-law remedies." Id. at ¶ 19, citing *Indus. Comm. v Kamrath* (1928), 118 Ohio St. 1, 3-4, 160 N.E. 470, and *Indus. Comm. v. Weigandt* (1921), 102 Ohio St. 1, 7, 130 N.E. 38.

{¶ 34} The act is premised on the recognition that industrial accidents are inevitable and that employees injured in the course of their employment ought to be able to recover certain damages (i.e., benefits). *Coolidge*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, ¶ 40. The act shifts the burden of the consequences of workplace injuries away from the individual employee to the employer, but ultimately, to society at large. Id. "[T]he Act 'operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability.' " *Bickers* at ¶ 19, quoting *Blankenship*, 69 Ohio St.2d at 614, 23 O.O.3d 504, 433 N.E.2d 572.

{¶ 35} The compromise established by the General Assembly must govern the relief available to employees, like Sutton, who suffer retaliatory employment action after an injury and before they have filed, instituted, or pursued a workers' compensation claim, just as it governs the relief for employees who suffer retaliatory employment action after they have filed, instituted, or pursued a workers' compensation claim. Accordingly, we hold that Ohio's public policy as established by the legislature is to limit remedies for retaliatory employment actions against injured employees to those listed in R.C. 4123.90.

{¶ 36} To hold otherwise and allow pursuit of common-law remedies for wrongful discharges in violation of this public policy would undermine the entire workers' compensation scheme, purpose, and operation. It would be nonsensical to acknowledge a tort in violation of public policy but fail to tailor the remedies in conformance with that public policy. We therefore hold that the remedies available for wrongful discharge in violation of the public policy against retaliatory employment actions as expressed in R.C. 4123.90 are limited to those listed in R.C. 4123.90.

### III. Conclusion

{¶ 37} For these reasons, we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim. To establish causation, a plaintiff who alleges wrongful discharge in violation of public policy as expressed in R.C. 4123.90 must prove that the adverse employment action was retaliatory, which requires proof of a nexus between the adverse employment action and the potential workers' compensation claim. We further hold that the remedies available for the tort are limited to those provided by R.C. 4123.90.

{¶ 38} Accordingly, we affirm the judgment of the court of appeals and remand the cause for determination of the fact-based elements of the claim, i.e., the causation and overriding-justification elements.

Judgment affirmed

and cause remanded.

PFEIFER, LUNDBERG STRATTON, and MCGEE BROWN, JJ., concur.

O'DONNELL, LANZINGER, and CUPP, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 39} The majority opinion establishes policy for Ohio by recognizing a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers a retaliatory employment action after injury but before filing, instituting, or pursuing a workers' compensation claim.

{¶ 40} Recognizing the legislative branch of government as the policy-making branch, I would assert that R.C. 4123.90 provides no remedy for Sutton and would encourage the General Assembly to resolve this situation if it intended the basis of Sutton's claim to be part of Ohio's public policy. In accordance with *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, the statute provides the exclusive remedy for claims in this area. As Justice Cupp wrote in *Bickers*, "the imposition of common-law principles of wrongful discharge into the workers' compensation arena runs counter to 'the balance of mutual compromise between the interests of the employer and the employee' as expressed by the General Assembly within the Act." Id. at ¶ 25, quoting *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572.

{¶ 41} To the contrary, the majority has today expanded the public policy behind the provisions of R.C. 4123.90 to apply to those persons discharged before filing, instituting, or pursuing a workers' compensation claim. This allowance is

a legislative prerogative, and in my view, we should follow the law as written and defer to the General Assembly, instead of stretching the extent of protection to fit situations not addressed by the statute.

**{¶ 42}** Accordingly, I respectfully dissent and would reverse the judgment of the court of appeals.

_____

**CUPP, J., dissenting.**

**{¶ 43}** Ohio's workers' compensation system, enacted pursuant to state constitutional authority, is a wholly statutory system. Section 35, Article II, Ohio Constitution; R.C. Chapter 4123; *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 74, 75; *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, ¶ 19; *Indus. Comm. v. Kamrath* (1928), 118 Ohio St.1, 3-4, 160 N.E. 470.

**{¶ 44}** The court today improperly injects common-law principles into this wholly statutory system, and it exceeds its authority by doing so. Moreover, the public policy that the court seeks to vindicate by inserting the tort of wrongful discharge into the law of workers' compensation is inapposite to the statute upon which the court relies to derive that policy.

**{¶ 45}** The majority opinion states that R.C. 4123.90 expresses a clear public policy against employer retaliation against injured employees. And that statement is true. There *is* a clear public policy against employers retaliating against injured employees who pursue benefits under the workers' compensation system. But the majority then uses this platform to make a gigantic leap of logic to conclude that because the statute does not also prohibit employer conduct that allegedly seeks to *prevent* an employee from applying for workers' compensation benefits, the statute, ipso facto, must have an unintended gap, which the court, in its wisdom, must fill.

**{¶ 46}** Contrary to the majority's unsupported conclusion, there is no gap in the statute. Rather, it is clear that the legislature, whether wisely or not, chose not to proscribe employer conduct that was short of retaliation. R.C. 4123.90, as relevant here, proscribes only employer conduct that *retaliates* against an employee's pursuit of a workers' compensation claim. For an employer's conduct to be retaliatory, the statute requires that the employee must first have sought to access the workers' compensation system by having "filed a claim or instituted, pursued or testified in any proceedings." R.C. 4123.90. Then, the employer must have responded by having "discharge[d], demote[d], reassign[ed], or take[n] any punitive action against [the] employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act." R.C. 4123.90.

**{¶ 47}** The conduct that the statute seeks to prohibit is an employer's retaliating against an employee after the employee takes some action in pursuit of a workers' compensation claim. This is the entire essence of the statutory proscription. Because the statute does not also proscribe employer conduct that may tend to *discourage or prevent* the employee from pursuing a claim in the first instance, it is clear that the legislature chose not to include such conduct. If the legislature had so intended, it would have been a simple matter for it to include language proscribing such conduct.

**{¶ 48}** The legislature, for example, could have added a few more words to the text of R.C. 4123.90, such as the following (proposed words in italics):

**{¶ 49}** "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer, *or take any such*

18

*action in order to prevent or discourage any employee from filing a claim or instituting, pursuing, or testifying in any such proceedings*."

{¶ 50} It may be good public policy to include an employer's preemptive conduct within the statutory proscription, or there may be adverse consequences to such a policy that are not apparent on its face. This court has insufficient information available to it to make such a far-reaching policy choice. In any case, the legislature did not include such wording, which makes it clear that that the legislature intended not to regulate in this area beyond the conduct proscribed in R.C. 4123.90.

{¶ 51} Even if there were a gap that was unintended, and even if it were appropriate for this court to attempt to fill that gap, the majority's chosen remedy is incongruous with the policy attempted to be vindicated. The majority injects a common-law tort action for what it terms "retaliation." In reality, it is not "retaliation" that is being alleged by Sutton in this case. "Retaliation" involves some adverse action taken to punish some conduct already undertaken. The gravamen of the complaint here is that the employer took action to *prevent or discourage* the employee from pursuing a workers' compensation claim in the first place—not to retaliate for having done so. It is, therefore, unclear how the court's remedy for employer "retaliation" can be utilized to any proper effect when the conduct of the employee against which the employer is alleged to have retaliated had not yet occurred. Under the allegations in this case, Sutton had not yet taken *any* steps toward a workers' compensation claim—not even the small step of stating to the employer that he intended to do so.

{¶ 52} The motive alleged by Sutton for Tomco's firing him was to have Sutton removed from Tomco's roster before he applied for workers' compensation benefits. On the record before us, it is not clear how the termination of Sutton's employment would benefit Tomco. Sutton asserts that Tomco's purpose in discharging him was to "preclude [his] Workers

Compensation injury claim and higher Workers Compensation premiums." But this claim lacks any basis in reality because whatever workers' compensation benefits may be awarded to a claimant who was employed when he was injured on the job will either (1) become a part of the employer's experience rating for calculation of its future workers' compensation premium, if the employer is a state-fund employer, or (2) be paid directly by the employer, if the employer is a self-insuring employer. This result obtains whether the employee remains employed by the employer at the time of filing a claim or not. Consequently, this motive alleged by Sutton as Tomco's reason for his termination appears to be nonsensical.

{¶ 53} Furthermore, the termination of an employee simply because the employee is injured on the job will not have the effect of discouraging the employee from filing for workers' compensation benefits. Instead, it is almost certain to have the opposite effect: it will strongly motivate the employee to file a claim.

{¶ 54} Finally, this matter was decided on a Civ.R. 12(C) motion for judgment on the pleadings, so there is not even an evidentiary record upon which this court may reliably base its leap into the unknown.

{¶ 55} In summary, I express concern because the court today injects common-law principles into a wholly statutory workers' compensation system, finds a gap in the existing statute where none exists, and institutes a remedy incongruous with the wrongful conduct alleged.

{¶ 56} Although the court has made a significant effort to narrow the scope of its decision expanding the tort of wrongful termination into the workers' compensation arena, I must respectfully dissent because I believe that the decision by the majority, although well intentioned, rests on foundations that are seriously flawed.

LANZINGER, J., concurs in the foregoing opinion.

_____

Jeffrey M. Silverstein & Associates, Jeffrey M. Silverstein, and Jason P. Matthews, for appellee.

J. Hollingsworth & Associates, L.L.C., and Jonathan Hollingsworth, for appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Barton Bixenstine, and Josephine S. Noble, urging reversal for amicus curiae Ohio Management Lawyers Association.

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, urging affirmance for amicus curiae Ohio Employment Lawyers Association.

Giorgianni Law, L.L.C., and Paul Giorgianni, urging affirmance for amicus curiae Ohio Association for Justice.

_____