[Cite as *Collins v. Mason*, 2020-Ohio-1186.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| KEITH COLLINS, | : | CASE NO. CA2019-04-035 |
| Appellant, | : | O P I N I O N<br>3/30/2020 |
| | : | |
| - vs - | : | |
| | : | |
| CITY OF MASON, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CV91115

Dinsmore & Shohl LLP, Gary E. Becker, Alan H. Abes, Michael B. Mattingly, 255 E. Fifth Street, Suite 1900, Cincinnati, Ohio 45202, for appellee

Wood & Lamping, LLP, Edward S. Dorsey, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, for appellee

Croskery Law Offices, Robert F. Croskery, 3905 Eastern Avenue, Suite 200, Cincinnati, Ohio 45226, for appellant

**M. POWELL, P.J.**

{¶ 1} Appellant, Keith Collins, appeals a decision of the Warren County Court of

Common Pleas granting summary judgment to appellee, the city of Mason, Ohio (the "City"),

in an age discrimination and retaliation action.

{¶ 2} In 1999, Collins was hired by the City as Assistant Superintendent of the Public Utilities Department. Ernie Stickler was the Superintendent of the Public Utilities Department and Collins' supervisor. The City operates Class IV water and wastewater treatment plants. The Ohio Environmental Protection Agency ("OEPA") requires an individual with a Class IV license to operate such treatment plants. Collins obtained his Class IV license in 2004 when he was 55 years old. Upon Stickler's retirement in 2006, Collins was promoted to Director of the Public Utilities.

{¶ 3} Because there are few individuals with a Class IV license and due to the time involved to obtain such a license, it is customary that another employee be cross-trained to become a primary operator as retirement of the incumbent primary operator approaches. In early 2014, when Collins was 65 years old, City Director of Services Richard Fair allegedly began repeatedly asking Collins when he was planning to retire. City Manager Eric Hansen further directed Collins to train Assistant Director of Public Utilities, Kathleen Dorman, to replace him. Dorman was 20 years or so Collins' junior.

{¶ 4} In September 2013, Collins and his wife were in the midst of divorcing. Collins moved in with his girlfriend, Lisa DeGuzman. In early 2014, DeGuzman formed a company named Environmental Water Services ("EWS") to assist small entities with water or wastewater treatment. DeGuzman held no OEPA licenses and had no background in water or wastewater treatment. DeGuzman relied upon Collins' expertise and licensure for the services provided by EWS. Collins performed much of the services EWS sold to its clients. On May 24, 2014, Collins entered into a nondisclosure agreement ("NDA") with EWS to conceal EWS from his wife.

{¶ 5} In February 2015, the City received a complaint from a resident alleging that Collins was conducting personal business while on City time. The complaint implicated the

City's Employee Policy Manual ("Policy") which requires its employees to disclose and obtain approval for outside employment to avoid conflicts of interest and the appearance of impropriety. Upon receipt of the complaint, Acting City Manager Jennifer Heft investigated the allegation (the "First Investigation"). Collins admitted to providing outside consulting to three entities, Snow Hill Country Club, East Clinton High School, and a potential regional biosolids facility. The biosolids work involved exploratory discussions between EWS, attorneys, and land developers regarding the construction of an EWS wastewater plant. Collins claimed he had notified Stickler of his outside employment with the country club and the high school. By contrast, Collins did not claim he had notified Stickler or another supervisor regarding the biosolids facility. Collins further advised he had signed an NDA regarding the potential biosolids facility but did not disclose his association with EWS during the First Investigation.

{¶ 6} On March 9, 2015, Heft sent Collins a memorandum summarizing the conclusions of her investigation. Heft advised Collins that his behavior did not violate the Policy; but cautioned him that his failure to communicate with the City Manager's office had led to the complaint which reflected badly upon him and the City. Collins took issue with Heft's conclusions and responded with a five-page letter. Collins' response did not include any claim of age discrimination. On March 23, 2015, Heft responded to Collins by emphasizing the Policy's requirement that outside employment and potential conflicts of interest be disclosed; and expressed her concern that Collins had signed an NDA without communicating with the City Manager's office.

{¶ 7} In June 2015, the City received additional complaints regarding Collins' professional demeanor and his outside employment on City time. Heft appointed Human Resources Director Kari Geiser and Fair to investigate whether Collins had (1) failed to attend an external training meeting as scheduled; (2) verbally berated a subordinate

concerning pool maintenance; and (3) interrupted a City meeting to take a 10 to 15-minute telephone call on behalf of EWS (the "Second Investigation"). Collins' work computer was searched as part of this investigation. The search revealed a proposal for EWS to perform work for the city of Martinsville. The proposal identified Collins as the "lead technician" and Leon "Ed" Smith, the Public Utilities Maintenance Foreman and a direct subordinate of Collins, as the "co-owner and project manager."

{¶ 8} On June 2, 2015, Geiser and Fair interviewed Collins about his relationship with EWS. Relying upon his NDA with EWS, Collins refused to answer their questions, including those concerning Smith's involvement with EWS. Subsequently, Geiser contacted Laura Smith, Ed Smith's wife and business partner, and inquired about Smith's relationship with EWS. Laura Smith sent Geiser documents disclosing that Smith's company, L&E Contract Services, Inc., had subcontracted EWS to provide services upon a project for the city of Leesburg and that L&E repaid DeGuzman a personal loan of $3,500 and paid EWS $4,219.75. The documents further disclosed that Collins performed services upon the Leesburg project and that his "wages" were $840.

{¶ 9} On June 18, 2015, Geiser placed Collins on administrative leave and issued a notice of predisciplinary hearing. The notice outlined the charges against Collins, which included his failure to cooperate during the City's investigations and the ways he may have violated the Policy through "insubordination, lack of truthfulness, conflicts of interest, and providing less than a full day's work for a full day's pay." The predisciplinary hearing was conducted on June 23, 2015. Collins appeared, represented by counsel. During the hearing, Collins' counsel confirmed that Collins was involved with EWS as a friend to DeGuzmann, Collins was not forthcoming during the investigations, and the NDA between Collins and EWS was intended to hide EWS from Collins' wife. Counsel further confirmed facts that Collins had previously refused to disclose, namely, that Smith had hired EWS as

- 4 -

a subcontractor on a job for which EWS was compensated. Counsel did not assert that the City's actions against Collins were the result of age discrimination.

{¶ 10} On June 29, 2015, Geiser and Fair sent a memorandum to City Manager Hansen, recommending Collins' termination. The recommendation was based upon the facts that Collins had been working for EWS for nearly a year without disclosing that employment to the City, including during the First Investigation, and that he had placed his own interests above those of the City when he refused to answer questions about EWS. Hansen accepted the recommendation and terminated Collins on June 30, 2015. Collins appealed his termination to the City Council, and for the first time, alleged that his termination was the result of age discrimination. City Council upheld Collins' termination.

{¶ 11} Within 24 hours of Collins' termination, Fair contacted Stickler to conduct weekly walk-throughs of the treatment plants while the City conducted a search for a Class IV operator to replace Collins. Stickler was 73 years old and is the holder of a Class IV operator license. In the interim, Dorman, Smith, and Public Utilities Plant Operator Bob Beyer performed Collins' duties. On July 7, 2015, based upon Stickler's recommendation, the City conditionally offered the position of Director of Public Utilities to Michael Hunter. Hunter was 67 years old and the holder of a Class IV operator license. That same day, Dorman sent a letter to OEPA notifying it that Collins no longer worked for the City, the City was in the process of hiring a Class IV operator, a conditional offer of employment had been extended, and if all testing came back acceptable, the City expected to have a Class IV operator on staff by mid-September.

{¶ 12} On July 24, 2015, Hunter accepted Collins' former position as Director of Public Utilities. In his acceptance letter, Hunter represented he would work for the City "for the next three to five years. * * * I will be retiring from the City of Mason on September 1, 2020 unless the City chooses to extend my tenure or I fail to meet [the responsibilities of

employment]." However, Hunter's wife became ill and he resigned in March 2016. Hunter was replaced in June 2016 by 42-year-old Shawn Hollon.

{¶ 13} In March 2016, Collins filed a lawsuit in federal court, asserting age discrimination and retaliation claims under both federal and state law. Collins later sought permission to dismiss his complaint without prejudice. The federal district court granted Collins' motion, over the City's objection. In September 2017, Collins refiled his lawsuit in federal court, asserting the same federal and state claims. The City moved for summary judgment and judgment on the pleadings. On April 13, 2018, the federal district court granted the City's motion for judgment on the pleadings, dismissed Collins' federal claims with prejudice, and dismissed his state law claims without prejudice.

{¶ 14} On May 11, 2018, Collins filed a complaint in the trial court alleging that his termination was the product of age discrimination and retaliation for his refusal to retire. The City moved for summary judgment. On April 10, 2019, the trial court granted summary judgment in favor of the City, finding that Collins had failed to establish a prima facie case of age discrimination and retaliation.

{¶ 15} Specifically, the trial court found that Collins' age discrimination claim failed as a matter of law because "[w]hile Stickler seemed to be only a temporary fill-in for the period of time between [Collins'] termination and a new, full-time hire," "67 year old Hunter was that full-time hire" when he accepted the position of Director of Public Utilities in July 2015 and took over Collins' job responsibilities. The trial court further found that Collins failed to prove that the City's proffered reason for terminating him, namely, his outside employment on City time and his failure to disclose such work during the City's two investigations, was merely a pretext:

> Plaintiff was a long-standing City employee and admits he was aware of the policy to notify the City of any outside work he was performing. In fact, Plaintiff *did* notify the City of two entities for

which he consulted: Snow Hill Country Club and East Clinton High School. Yet, even when given the opportunity by Heft in her March 2015 investigation, Plaintiff failed to disclose any connection between himself and EWS. When he was confronted with questions regarding his work relationship with EWS, Plaintiff flatly refused to discuss the business due to a nondisclosure agreement, thereby indicating his desire to place his connection with EWS above his work for the City.

{¶ 16} The trial court further found that Collins' retaliation claim failed as a matter of law because

> The Court finds there is no evidence Plaintiff ever complained of [Fair's] alleged harassing behavior to Hansen, Geiser, or any of his supervisors. Thus, there is no evidence in the record anyone but Plaintiff and Fair knew of Fair's allegedly harassing behavior of repeatedly asking when Plaintiff would retire. Furthermore, as there was no report by Plaintiff of Fair's harassing behavior, there can be no adverse employment action causally related to such complaint. In other words, if Plaintiff never reported Fair's alleged harassing behavior, he cannot then argue he was terminated due to reporting the harassing behavior. Finally, even if this Court were to assume Plaintiff reported Fair['s] alleged harassing behavior and Hansen was aware of that report, the length of time between the harassing behavior and Plaintiff's termination was too long to infer temporal proximately and a retaliatory motive.

{¶ 17} Collins now appeals, challenging the grant of summary judgment to the City in three assignments of error.

{¶ 18} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently, and without deference to the decision of the trial court. *Wulf v. Bravo Brio Restaurant Group, Inc.*, 12th Dist. Butler No. CA2018-12-238, 2019-Ohio-3434, ¶ 15. Summary judgment is proper when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10.

{¶ 19} The moving party bears the initial burden of informing the court of the basis

for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trial court to resolve. *Id.* In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wulf* at ¶ 16.

{¶ 20} Assignment of Error No. 1:

{¶ 21} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT, BY FINDING THAT COLLINS "REPLACEMENT" WAS PROPER, AS THE CITY BOTH INTENDED TO, AND DID, REPLACE COLLINS WITH A YOUNGER WORKER.

{¶ 22} Collins challenges the trial court's determination that Hunter was Collins' replacement and thus, that Collins failed to establish a prima facie case of age discrimination. Collins asserts he was replaced by Dorman as "it is clear that the INTENDED replacement was Kathy Dor[m]an, who was substantially younger, had been groomed for the position, and was being trained for the position." Alternatively, Collins asserts that his "true eventual replacement" was 42-year-old Hollon because the latter was the first operator identified by the City in its filings with OEPA.

{¶ 23} R.C. 4112.02(A) makes it an unlawful discriminatory practice

[f]or any employer, because of the * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

{¶ 24} In the absence of direct evidence of discrimination, a plaintiff alleging age discrimination must establish a prima facie case using indirect evidence, by demonstrating

- 8 -

that he or she (1) is a member of a protected class, (2) was qualified for the position in question, (3) suffered an adverse employment action despite his or her qualifications, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 9.[1] A person is replaced only when another employee is hired or reassigned to perform that person's duties. *Craddock v. Flood Co.*, 9th Dist. Summit No. 23882, 2008-Ohio-112, ¶ 12; *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990). A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. *Craddock* at ¶ 12.

{¶ 25} If the plaintiff successfully establishes a prima facie case of age discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* at ¶ 13. Should the employer carry this burden, the plaintiff must then prove by a preponderance of the evidence that the reason articulated by the employer is merely a pretext for discrimination. *Id.* At all times, however, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff" remains with the plaintiff. *Id.*

{¶ 26} Collins argues he was replaced by Dorman as "it is clear that the INTENDED replacement was Kathy Dor[m]an, who was substantially younger, had been groomed for the position, and was being trained for the position." Collins asserts that the determination of whether an employee was replaced by a substantially younger person is viewed at the moment of the termination. In support of his claim, Collins cites *Sutton v. Tomco Machining,*

---

1. "This test is a descendant of *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, in which the United States Supreme Court promulgated an analytical framework for claims of race discrimination" under Title VII of the Civil Rights Act of 1964. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 9.

*Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723.

{¶ 27} *Sutton* is a workers' compensation case involving an employee who was terminated immediately after suffering a workplace injury but before filing a workers' compensation claim. The employee filed a lawsuit against the employer, alleging an unlawful retaliation claim under R.C. 4123.90 and a tort claim for wrongful discharge in violation of public policy. The employee asserted he was terminated because the employer wished to avoid the filing of a workers' compensation claim which would adversely affect the employer's workers' compensation premiums. The appellate court reversed the trial court's dismissal of the claim for wrongful discharge in violation of public policy. The Ohio Supreme Court upheld the appellate court's decision.

{¶ 28} In so ruling, the supreme court recognized "a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after injury on the job but before the employee files a workers' compensation claim or institutes or pursues a workers' compensation proceeding." *Sutton*, 2011-Ohio-2723 at ¶ 28. That is, the supreme court held that an employer could be liable for workers' compensation retaliation for firing an injured employee before he had the opportunity to file a workers' compensation claim, even though the plain language of the statute at issue only penalized retaliating against an employee for filing such a claim. The supreme court found that the plain language of the statute had left a "gap" in protection that was clearly not intended by the legislature. *Id.* at ¶ 22. "Thus, the *Sutton* court was concerned with filling a 'gap' in protection[.]" *McMillan v. Global Freight Mgt.*, 9th Dist. Lorain No. 12CA10248, 2013-Ohio-1725, ¶ 13.

{¶ 29} Collins' reliance upon *Sutton* is misplaced. Unlike in *Sutton*, there is no gap to be filled or unintended consequences to be corrected. And in fact, Collins does not and cannot argue there is a gap in protection under R.C. 4112.02(A), or that the circumstances

- 10 -

of his termination placed him outside the protection of the statute. Unlike in *Sutton*, Collins retains the right to claim that his termination was due to age discrimination. Moreover, Collins has not identified a different statute or a constitutional provision from which he could base a claim for wrongful discharge in violation of public policy.

{¶ 30} Furthermore, *Sutton* does not stand for the general proposition that it is the moment of termination from which it is determined whether an employee has a prima facie case of wrongful discharge. Nor does *Sutton* stand for the proposition that in an age discrimination case, the determination of whether an employee was replaced by a substantially younger person is based upon the circumstances existing at the moment of the termination. As discussed above, well-developed case law has established criteria for determining a terminated employee's replacement based upon factors unrelated to the timing of termination. Finally, Collins' proposition is impractical and would hinder an employer's ability and the flexibility needed to temporarily cover the job duties of the discharged employee while conducting a search to permanently fill the position of the discharged employee.

{¶ 31} Although the City planned for Dorman to eventually replace Collins and a succession plan to that effect was in place, the evidence shows that she could not have replaced Collins at the time he was terminated because the position of Director of Public Utilities requires a Class IV operator license and Dorman only had a Class III operator license. Furthermore, the City's actions unequivocally show that Dorman was not Collins' replacement. As stated above, within 24 hours of Collins' termination, Fair contacted Stickler to conduct weekly walk-throughs of the treatment plans. Thereafter, within a week of Collins' termination, the City conditionally offered his former position to 67-year-old Hunter who ultimately accepted the position on July 24, 2015. Such evidence belies any suggestion the City intended to replace Collins with Dorman when it terminated Collins.

Thus, Collins fails to establish he was replaced by Dorman.

{¶ 32} Collins alternatively argues that his actual replacement was 42-year-old Hollon, and not Hunter, because Hollon was the first operator identified by the City in its filings with OEPA. The City acknowledges it did not designate Hunter as its operator of record with OEPA.

{¶ 33} Collins fails to establish he was replaced by a substantially younger employee. As stated above, "a person is replaced only when another employee is hired or reassigned to perform that person's duties." *Craddock*, 2008-Ohio-112 at ¶ 12. The evidence established that after Collins was terminated, the City hired 67-year-old Hunter as Director of Public Utilities and that Hunter performed the actual job duties on a day-to-day basis from September 1, 2015, until he resigned in March 2016 due to his wife's illness. Following Hunter's resignation, the City hired Hollon as Director of Public Utilities.

{¶ 34} Collins "points to no authority suggesting that [he] can satisfy [his] prima-facie burden by showing that [his] replacement's replacement – rather than [his] own replacement – was substantially younger." *Waltherr-Willard v. Mariemont City Schools*, 601 F.Appx 385, 388 (6th Cir.2015). The fact that the City may have failed to comply with Ohio Adm.Code 3745-7-02(A)(1) and (2) by not notifying OEPA that Hunter was the operator of record for the City's water and wastewater treatment plants does not detract from the fact Hunter filled Collins' former position of Director of Public Utilities and performed Collins' former duties on a day-to-day basis. The City's failure to notify OEPA does not void Hunter's hiring and employment as Collins' replacement.

{¶ 35} In light of the foregoing, we find that Collins failed to present evidence he was replaced by a substantially younger person, and thus failed to establish a prima facie case of age discrimination. The trial court, therefore, did not err in granting summary judgment to the City.

{¶ 36} Collins' first assignment of error is overruled.

{¶ 37} Assignment of Error No. 2:

{¶ 38} THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT, BY FINDING THAT THE REASONS OFFERED BY THE CITY FOR FIRING WERE NOT PRETEXTUAL. WHERE OTHER SENIOR EMPLOYEE ROUTINELY VIOLATED THE "OUTSIDE EMPLOYMENT" RULE WITH IMPUNITY AND WHERE COLLINS RECEIVED NO REMUNERATION FOR HIS LIMITED OUTSIDE ACTIVITY.

{¶ 39} In arguing his age discrimination claim in his memorandum opposing summary judgment, Collins claimed that the City's explanation for terminating him, to wit, his outside employment with EWS for over a year, was "unbelievably thin" because the Policy had not been strictly enforced in the past regarding outside employment; further, his "minimalist efforts" on behalf of EWS could hardly have violated the Policy. The trial court rejected Collins' argument while addressing his age discrimination claim. In his second assignment of error, Collins argues that the trial court erred in ruling that the City articulated a nonpretextual reason for his termination. Collins asserts that given the "numerous examples of inconsistent and uneven application of the outside employment policy," his outside employment is not a legitimate, nondiscriminatory reason for his termination but merely a pretext for discrimination.[2]

{¶ 40} As stated above, if a plaintiff successfully establishes a prima facie case of age discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Craddock,* 2008-Ohio-112 at ¶ 13. As Collins failed to establish a prima facie case of age discrimination, we need not consider whether the City's proffered reasons for terminating Collins were merely a pretext for

---

2. Based upon the manner in which Collins presented this issue in the trial court, we construe Collins' second assignment of error as solely relating to his age discrimination claim.

discrimination. *Alexander v. Columbus State Community College*, 10th Dist. Franklin No. 14AP-798, 2015-Ohio-2170, ¶ 46. Nevertheless, even if Collins had established a prima facie case of age discrimination, the City had legitimate, nondiscriminatory reasons to terminate him as discussed below under the third assignment of error. Accordingly, our ruling on Collins' first assignment of error renders his second assignment of error moot. *Id.*; *Grimsley v. Cain D.D.S., L.L.C.*, 5th Dist. Stark No. 2012 CA00052, 2012-Ohio-5273, ¶ 60.

{¶ 41} In any event, even if Collins had established a prima facie case of age discrimination, as the discussion of Collins' third assignment of error details, the City met its burden of production by articulating a legitimate, nondiscriminatory reason for Collins' termination.

{¶ 42} Assignment of Error No. 3:

{¶ 43} THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT, BY CONSIDERING THAT PLAINTIFF DID NOT COMPLAIN TO THE MAYOR, WHEN THE "CAT'S PAW" THEORY APPLIES TO THE FACTS TO ESTABLISH LIABILITY FOR BOTH AGE DISCRIMINATION AND RETALIATION.

{¶ 44} Collins generally argues that the trial court erred in granting summary judgment to the City regarding his retaliation claim. Collins asserts that Fair's recommendation that he be terminated was retaliation for Collins' refusal to retire, and thus, because Hansen's decision to terminate Collins was based upon the memorandum and recommendations of Fair and Geiser, the City is liable pursuant to the "cat's paw" theory of liability.

{¶ 45} R.C. 4112.02(I) provides in relevant part that it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, * * * or participated in any manner in any

- 14 -

investigation, proceeding, or hearing under [R.C.] 4112.01 to 4112.07[.]"

{¶ 46} In the absence of direct evidence, a plaintiff alleging retaliation must establish a prima facie case using indirect evidence, by demonstrating that (1) he or she engaged in a protected activity, (2) the employer was aware that the plaintiff had engaged in that activity, (3) the employer took an adverse employment action against the plaintiff, and (4) there is a causal connection between the protected activity and adverse action. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 13. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate nondiscriminatory reason for" its action. *Nebozuk v. Abercrombie & Fitch Co.*, 10th Dist. Franklin No. 13AP-591, 2014-Ohio-1600, ¶ 41. If the employer carries its burden, the burden then shifts back to the plaintiff to prove that the employer's stated reason is merely a pretext for discrimination. *Id.*

{¶ 47} We note that Collins does not argue he established a prima facie case of retaliation or established retaliation by direct evidence. Rather, Collins merely asserts in a conclusory fashion that given Fair's numerous inquiries as to when Collins would retire, Fair was biased against Collins due to his age and retaliated against him when Collins refused to retire.

{¶ 48} We find no error in the trial court's determination that Collins failed to establish a prima facie case of retaliation. Based upon Collins' argument, he presumably engaged in a protected activity by refusing to retire following Fair's inquiries. However, there is no evidence Collins ever complained of or reported Fair's alleged harassing behavior to Hansen or any other supervisor. Thus, there is no evidence that Hansen was aware of Fair's inquiries and that Collins had refused to retire, or that Hansen terminated Collins due to age.

{¶ 49} Nevertheless, Collins asserts Hansen vicariously retaliated against him when

he terminated him because Hansen relied upon Fair's memorandum and recommendation in doing so.

{¶ 50} "A 'cat's paw' is a person used by another to accomplish the other's purposes." *Smith v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 12AP-1073, 2013-Ohio-4210, ¶ 55, citing *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir.2006).[3] The cat's paw theory of liability in the employment discrimination context refers to a situation in which a biased subordinate, who lacks decisionmaking power, influences the unbiased decisionmaker to make an adverse employment action, thereby hiding the subordinate's discriminatory or retaliatory intent. *Bahar v. Youngstown*, 7th Dist. Mahoning No. 09 MA 55, 2011-Ohio-1000, ¶ 71. However, "[e]ven when considering a retaliation claim under a 'cat's paw' theory, courts require the plaintiff to demonstrate a direct causal connection between the subordinate's discriminatory animus and the decisionmaker's adverse employment action." *Spitulski v. Toledo School Dist. Bd. of Edn.*, 6th Dist. Lucas No. L-17-1300, 2018-Ohio-3984, ¶ 74. In other words, the plaintiff must show that the subordinate's discriminatory animus was the "but-for" cause of the unbiased decisionmaker's adverse employment action. *Smith* at ¶ 62; *Seoane-Vasquez v. Ohio State Univ.*, 577 F.Appx. 418, 428 (6th Cir.2014). As the Tenth Circuit Court of Appeals explained,

> [W]here a violation of company policy was reported through channels independent from the biased supervisor, or the undisputed evidence in the record supports the employer's assertions that it fired the employee for its own unbiased reasons that were sufficient in themselves to justify termination, the plaintiff's age may very well have been in play – and could even bear some direct relationship to the termination if, for

---

3. According to the United States Supreme Court, "[t]he term 'cat's paw' derives from a fable conceived by Aesop, put into verse by [Jean de] La Fontaine in 1679, and injected into United States employment discrimination by Judge Posner in 1990." *Staub v. Proctor Hosp.*, 562 U.S. 411, 415, 131 S.Ct. 1186 (2011), fn. 1. "In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing. A coda to the fable (relevant only marginally, if at all, to employment law) observes that the cat is similar to princes who, flattered by the king, perform services on the king's behalf and receive no reward." *Id.*

instance, the biased supervisor participated in the investigation or recommended termination – but age was not a determinative cause of the employer's final decision.

*Simmons v. Sykes Ents., Inc.*, 647 F.3d 943, 950 (10th Cir. 2011). Thus, to prevail in a retaliation case, the plaintiff has the burden of establishing that the retaliatory animus was the determinative, and not merely motivating, factor. *Smith* at ¶ 61.

{¶ 51} Collins failed to establish a prima facie case of retaliation pursuant to the cat's paw theory of liability. Collins cannot show a causal connection between the protected activity and the adverse employment action because the time between his refusal to retire and his termination is too remote. "Courts have found intervals of two to four months insufficient to show a causal connection." *Spitulski*, 2018-Ohio-3983 at ¶ 77. Collins' deposition testimony indicates that Fair's alleged harassing behavior regarding when Collins would retire occurred when Dorman transferred back to the Public Utilities Department. Collins believed it happened in "2012, 2013." Dorman testified it happened in 2011. Either way, Fair's alleged harassing behavior occurred years prior to Collins' termination.

{¶ 52} Further, the memorandum relied upon by Hansen in terminating Collins was a joint memorandum from both Fair *and* Geiser. Collins does not point to any summary judgment evidence that Geiser had any discriminatory animus toward him or that she was influenced by Fair in recommending Collins' termination. Finally, Collins does not contest the truth of the findings concerning his outside employment, his failure to advise the City about his work for EWS, and his refusal to answer inquiries regarding his relationship with EWS during the City's investigations. This is not a case "where a biased, mid-level supervisor presented the ultimate decision maker with false information in order to secure the plaintiff's termination." *Nebozuk*, 2014-Ohio-1600 at ¶ 48. Rather, Fair and Geiser simply reported the facts of Collins' conduct to Hansen, and Hansen independently

determined that Collins' conduct necessitated termination.  *Id.*

{¶ 53} Having failed to present Civ.R. 56(C) evidence establishing a causal connection between his alleged protected activity and his termination, Collins cannot prevail under the cat's paw theory of liability.  The trial court, therefore, did not err in granting summary judgment to the City regarding Collins' retaliation claim.

{¶ 54}  Collins' third assignment of error is overruled.

{¶ 55}  Judgment affirmed.

S. POWELL and RINGLAND JJ., concur.