[Cite as *Silvey v. Washington Square Chiropractic Clinic*, 2013-Ohio-438.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| BETH SILVEY, et al., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| | | **CASE NO. 2012-G-3052** |
| - vs - | : | |
| WASHINGTON SQUARE | : | |
| CHIROPRACTIC CLINIC, et al., | | |
| | : | |
| Defendants-Appellees. | | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 10M000204.

Judgment:  Affirmed in part; reversed in part and remanded.

*Andrew L. Margolius* and *Emily E. Warren-Gilbert*, Margolius, Margolius and Associates, 55 Public Square, Suite 1100, Cleveland, OH  44113 (For Plaintiff-Appellant).

*Mitchell L. Alperin* and *Mark W. Biggerman*, 29325 Chagrin Boulevard, Suite 305, Pepper Pike, OH  44122; and *Steven W. Tater*, Law Office of Steven W. Tater, 5031 Turney Road, Garfield Heights, OH  44125-2967 (For Defendants-Appellees).

THOMAS R. WRIGHT, J.

{¶1}  This appeal is from two final judgments of the Geauga County Court of Common Pleas.  In the first entry, the trial court granted summary judgment in favor of appellees, Dr. Robert Cohen, Dr. Rick Tangerman, Washington Square Chiropractic Clinic, and MidStates Chiropractic, on four of the five pending claims of appellant, Beth Silvey.  In the second entry, the trial court entered final judgment against appellant on her sole remaining claim, in accordance with a jury verdict.  Appellant raises issues

concerning the trial court's summary judgment ruling as well as other rulings made during trial.

{¶2} Dr. Robert Cohen is the part-owner and managing partner of a number of chiropractic clinics in Ohio. Two of these offices are Washington Square Chiropractic Clinic and MidStates Chiropractic, both located in Geauga County. Both clinics are separate corporate entities for which separate corporate books are maintained. However, the employees of the two offices are often moved between the offices, depending upon need.

{¶3} At some point prior to 2006, Dr. Cohen hired Dr. Rick Tangerman to work as a chiropractor at both Washington Square and MidStates. While Dr. Tangerman was seeing patients at Washington Square, appellant was hired to work primarily at that office. Later, appellant became the office manager of Washington Square. As part of her compensation, she received free treatments from the chiropractors associated with the two offices. At first, appellant asked to receive treatments from Dr. Tangerman.

{¶4} Within a short period after beginning her employment, appellant informed Dr. Cohen that Dr. Tangerman was making inappropriate sexual statements in front of her. After formally asserting her initial complaint, appellant attempted to overlook Dr. Tangerman's offensive comments and continued to work with him for approximately six months. But, in late 2007, she felt compelled to register a second complaint regarding the nature of Dr. Tangerman's language around her, especially when he gave her chiropractic treatments in accordance with the corporate policy. Upon conducting a short investigation into the new complaint, Dr. Cohen terminated Dr. Tangerman's employment at the Washington Square office on the basis that he had engaged in inappropriate acts. Within one month, though, Dr. Cohen re-hired him to work solely at

2

the MidStates office, so that his contact with appellant would be limited.

{¶5} In late 2008, Dr. Cohen approached appellant to discuss Dr. Tangerman's potential return to work the Washington Square office. Appellant gave her consent to this arrangement, and she was able to work with Dr. Tangerman for a period of four months. However, in April 2009, Dr. Tangerman resumed making the same type of sexual comments she finds offensive. She also believed Dr. Tangerman had purposely embarrassed her once when he had made a sexual comment about her in front of a patient.

{¶6} Ultimately, appellant submitted a new oral and written complaint to Dr. Cohen. Furthermore, during this same time period, a female massage therapist at Washington Square began having trouble with Dr. Tangerman's language and actions. These problems later led to her resignation as an employee.

{¶7} In June 2009, Dr. Cohen hired Amy Schudel as a receptionist/secretary for Washington Square. Almost immediately after starting her employment, Ms. Schudel began receiving treatments from Dr. Tangerman as part of her compensation. After a few treatments, though, she ceased her sessions with him because she believed he was making inappropriate comments. Ms. Schudel also thought that Dr. Tangerman was making improper sexual statements to her while they were working.

{¶8} Within two months of beginning her job at Washington Square, Ms. Schudel formally complained to Dr. Cohen about Dr. Tangerman's behavior. Since appellant had recently submitted her third complaint of inappropriate sexual comments by Tangerman, Dr. Cohen again conducted an abbreviated investigation into the matter. At the end of August 2009, Dr. Cohen informed appellant and Ms. Schudel that he would remove Dr. Tangerman from their office, but he could not do so until he was able

3

to hire a replacement doctor. As a result, Dr. Tangerman was permitted to continue to work at Washington Square until October 2009.

{¶9} At that time, Dr. Cohen again terminated Dr. Tangerman's employment at Washington Square, but immediately permitted him to start working again full-time at MidStates. Even though Ms. Schudel and appellant previously worked at the MidStates office on some occasions, they only performed their duties at Washington Square after Dr. Tangerman's "transfer." While Dr. Cohen was finally able to hire a new doctor at Washington Square, he did not give that doctor the same salary as Dr. Tangerman. Moreover, since the new doctor was only a part-time employee, the amount of work for appellant and Ms. Schudel decreased; thus, it was not necessary for them to work as many hours as they had earlier. Then, in December 2009, the new doctor resigned his position.

{¶10} During the weeks after the new doctor's resignation, Dr. Cohen told both appellant and Ms. Schudel that he was attempting to locate a new chiropractor to work at Washington Square. However, by mid-January 2010, Dr. Cohen had not hired a new doctor, and there was no further work for appellant and Ms. Schudel to perform at Washington Square. As a result, both of them ended their employment with Dr. Cohen's two companies. Despite this, approximately one week after they left their positions, Dr. Cohen reopened Washington Square and began seeing patients himself, acting in virtually the same capacity as Dr. Tangerman.

{¶11} Within one month of ending their employment, appellant and Ms. Schudel initiated the underlying civil action against Dr. Tangerman, Dr. Cohen, and the two companies. In their amended complaint, appellant and Ms. Schudel raised five claims sounding in sexual harassment/hostile work environment, retaliation with constructive

4

discharge, retaliatory harassment, negligent hiring and retention, and violation of public policy against sexual harassment and retaliation.

{¶12} Once the four defendants answered the amended complaint, the parties engaged in considerable discovery. After the case had been pending for fifteen months, Dr. Cohen and his two companies moved for summary judgment regarding all pending claims asserted by both plaintiffs. Soon thereafter, Dr. Tangerman submitted a similar motion under Civ.R. 56(C). As part of their response to the defendants' motions, the two plaintiffs also moved for partial summary judgment.

{¶13} In its judgment pertaining solely to appellant, the trial court concluded that her claim of sexual harassment/hostile work environment would go to trial. The trial court granted summary judgment as to the remaining four claims.

{¶14} A four-day jury trial was held on appellant's "hostile work environment" claim. The jury returned a verdict against appellant, expressly finding in an interrogatory that she did not prove that she was subject to sexually harassing conduct sufficiently severe or pervasive to have affected the terms, conditions, or privileges of her employment. The trial court then entered final judgment in accordance with the verdict.

{¶15} In appealing both the summary judgment determination and the results of the trial, appellant has raised six assignments of error for review:

{¶16} "[1.] The court erred when it granted summary judgment in favor of Defendant Tangerman, finding him not a supervisor and consequently not subject to independent supervisor liability.

{¶17} "[2.] The court erred when it granted summary judgment in favor of defendants on the negligent retention and hiring claim.

5

{¶18} "[3.] The court erred when it granted summary judgment in favor of defendants on the retaliation and retaliatory harassment claims.

{¶19} "[4.] The court erred when it dismissed the public policy cause of action; joint liability exists.

{¶20} "[5.] The court erred at trial in precluding relevant evidence regarding Defendant Cohen's 'investigation' and effort to find a replacement doctor.

{¶21} "[6.] Defendant's failure to obey the court's ruling precluding introduction of evidence regarding [appellant's] sexual history warranted a limiting instruction by the court and unfairly prejudiced [appellant]."

{¶22} Appellant's first four assignments pertain to the trial court's ruling granting summary judgment against her on four of her five claims. Under the second and the fourth assignments, she contends that summary judgment was not proper as to her claims of negligent hiring/retention and violation of public policy against sexual discrimination.

{¶23} The elements of these two claims require a showing of actual discrimination in order for a plaintiff to prevail. To prove the claim of negligent hiring or retention, appellant was required to demonstrate that Dr. Tangerman was "incompetent" because he engaged in sexually discriminatory behavior. *Arp v. Geauga Cty. Commrs.*, 11th Dist. 2002-G-2474, 2003-Ohio-2837, ¶45. As part of a claim for violation of public policy, appellant was required to establish that the discriminatory behavior led to her dismissal, in violation of public policy. *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, ¶9.

{¶24} As discussed, the jury specifically found that appellant was not subject to sexually harassing conduct sufficiently severe or pervasive as to affect the conditions of

6

her employment. Because the jury found that no sexual discrimination occurred, appellant would not have prevailed on her claims of negligent hiring/retention and violation of public policy even if they had gone to trial. In relation to the public policy claim, to the extent that appellant might have been "retaliated" against as a result of the mere submission of her complaints to Dr. Cohen, her rights are adequately protected under her two retaliation claims, which will be discussed later. Because any error the trial court may have made regarding the foregoing two claims was non-prejudicial due to the jury's response to the interrogatory, appellant's second and fourth assignments are without merit.

{¶25} A similar analysis applies to appellant's first assignment of error, where she contests the trial court's finding in its summary judgment decision that Dr. Tangerman was not her immediate supervisor for purposes of determining whether he could be held independently liable to her. However, in raising the "supervisor" issue, appellant has only referred to Tangerman's potential liability for his discriminatory acts against her; her appellate brief does not contain any reference to her retaliation claims in this regard. Given that the issue of sexual discrimination has already been tried and judgment has been entered in favor of all four defendants on that claim, any question as to whether Tangerman was appellant's supervisor was also non-prejudicial. For this reason, appellant's first assignment also is without merit.

{¶26} The basic substance of appellant's retaliation claims are addressed under her third assignment of error. In reviewing the trial court's decision to grant summary judgment on those particular claims, this court must follow the basic standard set forth in Civ.R. 56:

{¶27} "In reviewing an award of summary judgment, we apply a de novo

7

standard of review. * * *. As such, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, who is entitled to have the evidence construed most strongly in her favor. * * *." (Citations omitted.) *Arp*, 2003-Ohio-2837, at ¶21.

{¶28} "The Supreme Court stated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296 * * *, that:

{¶29} "'(* * *) the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.* The "portions of the record" to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. (* * *)' (Emphasis sic.)

{¶30} "If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App. 3d 704, 711, * * *. The *Brown* court stated that 'we review the judgment independently and without deference to the trial court's determination.' Id. An appellate court must evaluate the record 'in a light most favorable to the nonmoving party.' *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, * * *. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party

8

opposing the motion. Id." *Paugh v. P.J. Snappers*, 11th Dist. No. 2004-T-0029, 2005-Ohio-701, ¶15-17.

{¶31} In ruling in favor of the defendants on appellant's two claims for retaliation, the trial court concluded that appellant failed to prove any direct causal connection between the submission of her complaints and subsequent job loss. Before this court, appellant maintains under her third assignment that her evidentiary materials were sufficient to avoid summary judgment on these particular claims.

{¶32} "To prove a claim of retaliation, a plaintiff must establish three elements: (1) that she is engaged in a protected activity; (2) that she was subjected to an adverse employment action; and (3) that a causal link exists between a protected activity and the adverse action. Once a plaintiff successfully establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the articulated reason was a pretext." *Peterson v. Buckeye Steel Castings*, 133 Ohio App.3d 715, 727 (10th Dist.1999). Under the three basic elements for retaliation, the plaintiff is not required to show that her original complaints for discrimination were meritorious; i.e., it is only necessary to prove that she engaged in protected behavior in filing her complaints.

{¶33} In responding to the two motions for summary judgment, appellant argued that her constructive discharge was a direct result of her submission of her sexual harassment complaints against Dr. Tangerman. Specifically, she stated that Dr. Cohen purposely failed to locate and hire a new full-time doctor to take Dr. Tangerman's place at Washington Square. In turn, Dr. Cohen's actions had the effect of eliminating her job because the office was no longer creating business. According to Dr. Cohen and his

9

two companies, though, the lack of business constituted a legitimate reason to end appellant's employment, and was not in any way connected to the sexual harassment complaints.

{¶34} Despite the fact that Dr. Cohen and the two companies carried their burden to state a legitimate reason for the lack of sufficient business at appellant's office, she was able to present some evidence tending to show that the lack of business was a sham. That is, she submitted some evidence showing that Dr. Cohen started seeing patients again at Washington Square within one week after appellant left her position. From this, a reasonable person could infer that Dr. Cohen purposely waited until she and Ms. Schudel essentially quit to re-open the office. In other words, there was a factual issue as to whether Dr. Cohen sought to eliminate her job by limiting the business of the office until she gave up.

{¶35} Furthermore, appellant submitted evidentiary materials tending to show that Dr. Tangerman engaged in retaliatory harassment against her after she registered her last complaint in August 2009. In her deposition, she testified that, during the period before he was removed from Washington Square in October 2009, Dr. Tangerman would constantly yell at her and threaten to have her terminated if he lost his job as a result of her complaints. She also asserted that he attempted to physically intimidate her by grabbing her arm, and that he also tried to smear her work disciplinary record by creating false complaints about her job performance.

{¶36} When construed in her favor, appellant's evidence was sufficient to raise a factual dispute as to whether she was the subject of adverse employment action as a result of her complaint against Dr. Tangerman. For this reason, her third assignment of error is well taken because the trial court should not have granted summary judgment of

her claims of retaliation.

{¶37} Appellant's remaining two assignments pertain to the propriety of certain rulings made by the trial court during the trial. Under her fifth assignment, she submits that the trial court erred in denying her request to present the deposition testimony of two witnesses. Appellant argues that the denial was improper because the disputed testimony was relevant to material issues in the trial.

{¶38} The first deposition testimony appellant sought to introduce was that of Dr. John Kravarik, who was a business partner of Dr. Cohen. As part of his testimony at trial, Dr. Cohen appeared to make statements that conflicted with his prior deposition testimony concerning the extent of his investigation into appellant's and Ms. Schudel's complaints. Specifically, Dr. Cohen testified at trial that he never consulted directly with Dr. Kravarik about the discrimination charges, while he previously stated during his deposition that he and Dr. Kravarik spoke on a number of occasions during the investigation. In light of this, appellant moved to present Dr. Kravarik's recorded testimony, in which he testified that he did not recall speaking to Dr. Cohen about the matter.

{¶39} As previously noted, the trial went forward solely upon appellant's claim of sexual harassment/hostile work environment. As part of the elements of this claim, a plaintiff is required to show that "the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel v. Food Ingredient Specialties*, 89 Ohio St.3d 169, 176-177 (2000). There is no dispute that Dr. Cohen knew of appellant's complaints. The critical issue was whether Dr. Cohen took timely and appropriate corrective action.

11

**{¶40}** Dr. Cohen's testimony at trial was consistent with Dr. Kravarik's deposition testimony. Thus, the failure to admit Dr Kravarik's deposition testimony was not prejudicial. Moreover, the court allowed appellant to cross-examine Dr. Cohen about the contradiction between Dr. Cohen's deposition testimony, where he said he and Dr. Kravarik had spoken about the complaints, and his trial testimony to the contrary. Therefore, appellant was able to attack Dr. Cohen's credibility.

**{¶41}** The other testimony appellant wanted to present via disposition was that of Bharon Hoag, the Executive Director of the Ohio State Chiropractic Association. At trial, Dr. Cohen testified that, as part of his efforts to find a replacement for Dr. Tangerman after August 2009, he placed an advertisement through the state association. According to appellant, Hoag testified during his deposition that his review of the records of the association indicated that no such advertisement was received by the association during the pertinent time frame. Based upon this, appellant maintains that the deposition testimony was relevant to rebut Dr. Cohen's testimony that he made a concerted effort to replace Dr. Tangerman.

**{¶42}** Given that the Hoag testimony supports the inference that Dr. Cohen did not attempt to replace Dr. Tangerman as quickly as possible, the testimony was relevant to the "corrective action" element of appellant's hostile work environment claim. Nevertheless, this court would again note that the jury expressly found that appellant did not prove that she was subjected to sexually harassing conduct sufficiently severe or pervasive as to adversely affect her employment. Thus, any error the trial court committed regarding the Hoag deposition testimony was not prejudicial to appellant. For this reason, her fifth assignment lacks merit.

**{¶43}** Under her final assignment, appellant contends that she was denied a fair

trial as a result of the defendants' failure to abide by a pre-trial order. She emphasizes that, before trial, the trial court ordered that no evidence could be introduced concerning her sexual history, except as it might relate to any statement she allegedly made to Dr. Tangerman. According to her, the defendants violated the order by soliciting testimony regarding her relationship with another doctor who also worked at Washington Square.

{¶44} The disputed testimony occurred during the cross-examination of Dr. Cohen:

{¶45} "Q. Do you think Beth Silvey was truthful in her allegations, sir?

{¶46} "A. At what particular time.

{¶47} "Q. Throughout.

{¶48} "A. There was a point in time when I began to have doubt with the possibility of doubt with some of the concerns that Ms. Silvey had.

{¶49} "Q. At what point in time did that occur, sir?

{¶50} "A. That was when in Ms. Silvey's presence that she stated that she had sexual intercourse or a sexual relationship with the Doctor Ryan Church who was an employee - -"

{¶51} Appellant asserts that the defendants blatantly ignored the trial court's order by allowing Dr. Cohen to testify in this manner. However, the trial transcript plainly shows that the foregoing exchange took place during appellant's cross-examination of Dr. Cohen. Thus, it was appellant herself who asked the question to which the disputed answer was given. Under such circumstances, it cannot be said that the actions of the defendants denied appellant a fair trial. For this reason, her sixth assignment of error does not have merit.

{¶52} Pursuant to the foregoing analysis, appellant's third assignment has merit.

13

Therefore, the trial court's decision granting summary judgment against appellant on her two "retaliation" claims is reversed in part, and the case is hereby remanded for further proceedings consistent with this opinion.  In all other respects, the assignments of error are without merit, and the judgment of the Geauga County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.